MARK BREINER *v.* STATE DENTAL
COMMISSION ET AL.
(AC 18981)

O'Connell, C. J., and Lavery and Hennessy, Js.[1]

Argued February 15—officially released May 16, 2000

*Jonathan J. Klein,* for the appellant (plaintiff).

*Henry A. Salton* and *Peter L. Brown,* assistant attorneys general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendants).

*Opinion*

LAVERY, J. The plaintiff, Mark Breiner, appeals from the judgment of the trial court dismissing an application for injunctive relief to enjoin an administrative proceeding brought against him by the defendant department of public health before the defendant state dental commission (commission). The plaintiff contends that the court improperly (1) denied his request for injunctive relief because exhaustion of administrative remedies would have been a futile exercise and (2) denied him the opportunity to ask certain questions of a witness. We affirm the judgment of the trial court.

The court found the following facts, which are relevant to this appeal: "The vortex out of which this case arises is the public controversy over continued use of mercury, a toxic substance, as an ingredient in dental fillings. Our state environmental regulations generally have recognized its highly toxic properties and monitor its use and disposal, yet it still remains the principal ingredient in what used to be known as silver amalgam utilized for filling teeth. The evidence before the court shows there are two professional schools of thought on the controversy. The American Dental Association position is that there is no persuasive evidence that

amalgam use can cause bodily harm to patients or that removal of existing mercury fillings will improve health or cure illness. Others in an emerging holistic school of thought link use of toxic amalgams with health danger and specific ailments. The plaintiff falls into this second camp.

"The plaintiff, a licensed dentist in Connecticut, has practiced for almost three decades and is now the subject of a disciplinary proceeding before the state dental commission arising out of his views, conduct and professional advice about removal of mercury amalgam dental fillings. The commission consists of nine members appointed by the governor under General Statutes § 20-103a (a). Its membership consists of both dentists and nondentists. On January 17, 1997, the department of public health issued a statement of charges against the plaintiff pursuant to General Statutes § 20-114 in which it alleged that the plaintiff engaged in incompetent or fraudulent conduct by claiming that the removal of mercury amalgam fillings could alleviate symptoms of various medical conditions, specifically, amyotrophic lateral sclerosis, anemia and Hodgkin's disease, and that these claims had been made to different patients in 1985, 1993 and 1994, respectively.

"The plaintiff has been the subject of complaints made by practicing dentists for several years. Some of these were made to the Connecticut State Dental Association, a professional association in which membership is voluntary but which maintains its own ethics council. Other complaints were made to the department of public health. The earliest complaints were not entertained by health department officials because of their recognition that there were two schools of professional thought on the issue. Later complaints and demands of Perry M. Opin, a Connecticut State Dental Association member, resulted in action by an employee of the department of public health, which resulted in the state

dental commission, an official administrative adjudicative body, taking a position in favor of the American Dental Association view on the subject. Once that happened, in its quasi-prosecutorial rule, the health department generated a statement of charges against the plaintiff that must now be heard by the dental commission as an adjudicative official administrative agency."

Once those charges were issued, the commission scheduled a hearing before a panel of the commission on January 26, 1998. The panel consisted of three members: William M. Bridgeford, Jr., a dentist and chairman of the panel; David W. Perkins, a dentist; and Carolyn Augur, a public member.

Perkins and Bridgeford are members of the American Dental Association (ADA). In 1986, the ADA adopted an advisory opinion under the standards of conduct regarding the removal of otherwise healthy fillings based on the alleged toxicity of the mercury component of the amalgam.[2] In 1994, the commission held a business meeting. During the meeting, the participants approved a statement that the commission accepts the ADA position on the replacement of amalgams.[3] The statement was adopted without a formal vote and with little debate.[4]

The plaintiff filed a complaint for preliminary and permanent injunctive relief in the Superior Court on

[2] The ADA advisory opinion states: "Based on available scientific data the ADA has determined through the adoption of Resolution 42H-1986 . . . that the removal of amalgam restorations from the nonallergic patient for the alleged purpose of removing toxic substances from the body, when such treatment is performed solely at the recommendation or suggestion of the dentist, is improper and unethical."

[3] The minutes of the meeting indicate that the following action was taken: "Replacement of Amalgams—The commission accepts the American Dental Association's position on the replacement of amalgams, which is that it serves no medical purpose."

[4] The court found that no evidence existed that Perkins or Bridgeford inspired the placement of this statement on the agenda or knew at the time that complaints had been made by other dentists about the plaintiff.

January 23, 1998; alleging deprivation of procedural due process and free speech under the Connecticut and federal constitutions. The plaintiff alleges that he cannot receive a fair hearing because Perkins and Bridgeford are ADA members, consider themselves bound to follow ADA principles and will thus be unduly biased against the plaintiff. The plaintiff alleges that he cannot receive a fair hearing unless the reviewing panel has no ADA members. On October 7, 1998, the court denied the request for injunctive relief and dismissed the action. The plaintiff appealed to this court.

I

The plaintiff contends that the court improperly concluded that the plaintiff must exhaust available administrative proceedings before seeking injunctive relief in the Superior Court and improperly refused to apply the futility exception to the exhaustion doctrine. We disagree.

The court's findings of fact are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996). "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 588, 424 A.2d 285 (1979). "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Citations omitted; internal quotation

marks omitted.) *Johnson* v. *Dept. of Public Health*, 48 Conn. App. 102, 111, 710 A.2d 176 (1998); see *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 351, 542 A.2d 672 (1988). In addition, a favorable outcome by the administrative adjudication may render judicial intervention unnecessary. *Pet* v. *Dept. of Health Services*, supra, 351.

Although important public policy considerations favor exhaustion of administrative remedies before permitting judicial review, a small number of exceptions are permitted for narrowly defined purposes. "One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate." *Mendillo* v. *Board of Education*, 246 Conn. 456, 467, 717 A.2d 1177 (1998). It is futile to seek an administrative remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings. *Simko* v. *Ervin*, 234 Conn. 498, 507, 661 A.2d 1018 (1995). The plaintiff's preference for a particular remedy does not determine the adequacy of that remedy. "[A]n administrative remedy, in order to be adequate, need not comport with the plaintiff['s] opinion of what a perfect remedy would be." (Internal quotation marks omitted.) *Savoy Laundry, Inc.* v. *Stratford*, 32 Conn. App. 636, 642, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993).

A

We first address the plaintiff's claim that the testimony of Perkins and Bridgeford on the amalgam issue creates such bias against him that the administrative proceeding is an exercise in futility.

Agency bias is a ground for meeting the "futility" requirement. *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 369, 613 A.2d 254 (1992). Absent countervailing proof, members of administrative bodies

acting in an adjudicative capacity are presumed to be unbiased. *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 100, 596 A.2d 374 (1991). "[T]o prove bias as a ground for disqualification, the plaintiff must show more than an adjudicator's announced previous position about law or policy . . . . *He must make a showing that the adjudicator has prejudged adjudicative facts that are in dispute.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Clisham* v. *Board of Police Commissioners*, supra, 362. The bias must be so prevalent that it is "too high to be constitutionally tolerable." (Internal quotation marks omitted.) Id.

Perkins testified that he accepted the ADA's position on mercury amalgams because the ADA has the best information available and is an expert source to rely on for dental standards. Perkins also testified that dentists should be bound by the ADA guidelines. Bridgeford testified that the ADA's position probably has some basis. Bridgeford was aware that studies regarding the effect of mercury amalgams went "both ways." Bridgeford also stated that by adopting the ADA position, the commission was attempting to reassure members of the public who are concerned about mercury based amalgams. Bridgeford further stated that "the presence of silver amalgam alloy restorations in your mouth is not the [etiology] of disease."[5]

The mere fact that Perkins and Bridgeford have opinions regarding the appropriate standards of practice does not constitute bias, thereby making the administra-

---

[5] The plaintiff in his brief and at oral argument refers to Bridgeford's stated phrase as "etiology of disease," although the transcript records the spoken phrase as "ideology of disease." "Etiology," defined as the cause of a disease or a disorder, is probably the word used by Bridgeford. The word "ideology," defined as "a systematic body of concepts esp. about human life or culture"; Merriam-Webster's Collegiate Dictionary (10th Ed. 1993); is likely the result of a transcriber's error.

tive process a futile exercise. Contrary to the plaintiff's assertions, the scientific validity of whether dental fillings that contain mercury are toxic and whether removing mercury fillings because of toxicity is appropriate are not adjudicative facts in this matter. Those issues are not inexorably tied to the facts of the plaintiff's individual case. See *Moore* v. *Moore*, 173 Conn. 120, 122, 376 A.2d 1085 (1977). "Adjudicative facts . . . are unique to the individual case and require adjudication." *Broz* v. *Heckler*, 711 F.2d 957, 959 n.1 (11th Cir. 1983). Whether fillings that contain mercury are toxic and should be removed are issues that pertain to the standards of practice of the dental profession. Standards of practice comment on the appropriate conduct of an entire profession, not just a particular individual. Accordingly, standards of practice in this case need not be treated as factual information contained in the record of an administrative proceeding. See General Statutes § 4-178 (6); *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 666–67, 638 A.2d 6 (1994). As the United States Court of Appeals for the Second Circuit has noted: "[I]t is not improper for members of regulatory commissions to form views about law and policy on the basis of their prior adjudications of similar issues which may influence them in deciding later cases." *Rombough* v. *Federal Aviation Administration*, 594 F.2d 893, 900 (2d Cir. 1979).

Indeed, taking a prior position on an issue related to a dispute does not disqualify a decision maker on grounds of bias and make the administrative proceeding futile. "[A] decisionmaker [is not] disqualified simply because he has taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances." (Internal quotation marks omitted.) *Hortonville Joint School District No. 1* v. *Hortonville*

*Education Assn.*, 426 U.S. 482, 493, 96 S. Ct. 2308, 49 L. Ed. 2d 1 (1976). For example, in *Housing Authority* v. *Papandrea*, 222 Conn. 414, 610 A.2d 637 (1992), the local housing authority sought to enjoin the defendant state housing commissioner from performing a rental assistance and housing voucher program in the town. Id., 416. The defendant moved to dismiss the plaintiff's action in the Superior Court, claiming that the plaintiff had failed to exhaust available administrative remedies. Id. The plaintiff argued that it was futile to pursue administrative remedies before the commissioner because the commissioner already had commented publicly on the issue in a manner adverse to the plaintiff. Id., 428–30. Our Supreme Court disagreed and concluded that the fact that the commissioner indicated a contrary view on the matter does not absolve "the plaintiff of its obligation to pursue its administrative remedies in an effort to persuade the commissioner that his position was legally incorrect." Id., 432; see also *LaCroix* v. *Board of Education*, 199 Conn. 70, 84–85, 505 A.2d 1233 (1986).

Every member of a profession is presumed to know the governing standards of practice. *Altholtz* v. *Dental Commission*, 4 Conn. App. 307, 315, 493 A.2d 917 (1985). Adopting the plaintiff's position would create the unusual result of making administrative adjudicators holding expertise in a given area more vulnerable to bias claims because of their prior conclusions in their chosen field. We agree with the trial court that the plaintiff has failed to exhaust his administrative remedies and has not carried his burden on the futility exception.

B

The plaintiff's second claim is that the 1986 ADA position on amalgam replacement and the commission's 1994 adoption of that position sufficiently bind

Bridgeford and Perkins such that an administrative hearing before them would be futile. We disagree.

Neither the ADA's position nor the commission's position binds Perkins or Bridgeford. In its memorandum of decision, the court discussed Bridgeford, who was present at the 1994 commission meeting where the 1986 ADA advisory opinion was adopted: "[Bridgeford] recalled a round table discussion at [the meeting] among the dentist members of the state dental commission in which the lay members did not participate. It lasted between three [and] five minutes. He now says [that] it was not the state dental commission's intent to set up a rule or regulation and it was not a criteria. Instead, he saw it as a 'circumstance that, if this would occur, you would have to look at what came before you and this would be one of the ways to evaluate as criteria whether or not this was appropriate or inappropriate, depending on the circumstances that the occasion was surrounded with.' He did not recall any discussion by the dental commission members of the phrase 'serves no medical purpose' at the meeting at which the ADA position was adopted. He indicated by adoption of the 'American Dental Association's position' that the commission was 'open to reviewing this as part of any other ethical code in the conduct of dentistry as we needed to do on a case specific basis.' "

Furthermore, the 1994 position taken by the commission is, as a matter of law, no more than a mere "guideline" or "advisory opinion" and not a statute or regulation requiring compliance. "Where a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future, it is a substantive rule, i.e., a 'regulation' requiring compliance with the [Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. (UAPA)]." *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care*, 177 Conn. 356, 362, 417 A.2d 358

(1979). Where rules were not adopted and promulgated pursuant to the applicable provisions of the UAPA, they are considered invalid and of no effect. See id., 365.

In *Salmon Brook Convalescent Home, Inc.*, the state commissioner on hospitals and health care denied a rate increase requested by the convalescent home because it had violated certain compensation guidelines followed by the hospital commission. Id., 359–60. The court struck down those "guidelines" as illegal regulations because they were applied as substantive rules, but had been not submitted for adoption under required UAPA procedures of notice and comment. Id., 361–64.

In this case, we agree with the trial court's conclusion that "[t]here has been no showing here that any commissioner has already determined to impose discipline even before hearing evidence in this case or has already decided that [the plaintiff] performed unnecessary or harmful procedures or himself advised them." Bridgeford's testimony reveals that adoption of the ADA advisory opinion was not intended as binding on hearing boards, nor was it intended to create a binding rule or regulation. If the commission intended to do so, it would be vulnerable to violating the requirements of the UAPA. See id., 368. The court properly concluded that the positions taken by the ADA and the commission do not bind Perkins and Bridgeford so as to render the plaintiff's administrative hearing a futile affair.

## II

The plaintiff also claims that the court improperly prohibited him from asking certain questions of Perkins. We disagree.

The defendants filed a pretrial motion in limine opposing examination of Perkins and Bridgeford. The court heard argument and orally ruled that a limited

scope of questioning was available to the plaintiff.[6] Perkins testified at trial, a question was asked, and the court, sua sponte, enforced its prior ruling, stating that the question went beyond the area previously outlined.

The plaintiff was not permitted to ask Perkins how he applies the commission's advisory opinion regarding mercury amalgams in his own practice. This inquiry raises Perkins' personal views and his application of those views to his private practice. In essence, the plaintiff was attempting to make an inquiry into the personal mental processes of the decision maker, an inquiry that is well settled in our jurisprudence to be impermissible. *Martone* v. *Lensink*, 215 Conn. 49, 54, 574 A.2d 803 (1990); *Henderson* v. *Dept. of Motor Vehicles*, 202 Conn. 453, 459, 521 A.2d 1040 (1987). "[A]n adjudicating official may not ordinarily be subject to inquiry concerning the mental process used in reaching a decision." (Internal quotation marks omitted.) *Adriani* v. *Commission on Human Rights & Opportunities*, 228 Conn. 545, 551, 636 A.2d 1360 (1994).

"Just as a judge cannot be subjected to such a scrutiny [of cross-examination], so the integrity of the administrative process must be equally protected." (Internal quotation marks omitted.) *Welch* v. *Zoning Board of Appeals*, 158 Conn. 208, 215, 257 A.2d 795 (1969); see also *United States* v. *Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429 (1941). The plaintiff urges us to allow inquiry into an adjudicator's subjective impressions and personal applications of individual pieces of evidence. Such an inquiry, as a practical matter, would allow a litigant to challenge each factual determination of an adjudicator. Id. This could impair decision-making processes by agency adjudicators in that they would be less willing to explore and discuss all options avail-

---

[6] The exact scope of the permitted inquiries as decided by the trial court is not in our record.

able to them. See *Walker* v. *NCNB National Bank of Florida*, 810 F. Sup. 11, 12 (D.D.C. 1993); see also *United States* v. *Morgan*, supra, 422. Thus, the court correctly did not allow the plaintiff's inquiry.

The judgment is affirmed.

In this opinion the other judges concurred.