[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Robin Ellison, appeals from the June 25, 1999 decision of a fair hearing officer for the Department of Social Services ("DSS"), upholding the termination of benefits received under the temporary family assistance program ("TFA"), General Statutes § 17b-112.
The hearing officer's factual findings may be summarized as follows:
1. Ellison received twenty-one months of TFA benefits for herself, four of her children and the children's father, William Davis.
2. Ellison and Davis were granted two, six month extensions and were receiving financial assistance in the thirty-second month. CT Page 9472
3. Ellison and Davis were both mandatory participants in DSS' jobs first employment services program ("employment services program").
4. As part of the employment services program. Ellison and Davis were referred to the Department of Labor in September of 1998.
5. In August 1998, Ellison and Davis agreed to a jobs first independence plan, whereby they agreed to cooperate with DSS in a job search plan to seek full-time employment.
6. Ellison missed two consecutive job club meetings and failed to submit a complete job search log.
7. Davis missed appointments with the employment services contractor, METC, on November 19, 1998, January 7, 1999 and January 30, 1999.
8. On January 21 and 25, 1999, Ellison and Davis were notified that they were not in compliance with the employment services programs and that a conciliation appointment would be held on February 2, 1999.
9. At the conciliation meetings, Ellison and Davis claimed that they were in compliance with the employment services programs in which they were each involved and that they would provide proof of such compliance.
10. Neither Ellison nor Davis provided the requisite proof.
11. On February 9, 1999, DSS sent a notice to Ellison's family unit proposing to discontinue their TFA benefits for failure to follow the employment services rules.
12. Effective February 28, 1999, DSS terminated the Ellison family unit's TFA benefits.
(Return of Record ("ROR"), Volume I, pp. 1-3.)
Based upon these factual findings, the hearing officer upheld DSS' February 9, 1999 decision discontinuing the TFA benefits received by Ellison and Davis. Thereafter, the plaintiff timely filed this present administrative appeal pursuant to General Statutes §§ 4-166 et seq. and 4-183 of the Uniform Administrative Procedure Act.[1] Since the plaintiffs TFA benefits have been terminated, the court finds that the plaintiff is aggrieved.
In the present case, Ellison's claims that the hearing officer was biased.[2] She relies upon two occurrences at the April 20, 1999 hearing to establish bias. First, at the commencement of the hearing, the CT Page 9473 hearing officer inquired as to the number and ages of her children. He further asked Ellison the length of time that she had been receiving TFA benefits. Upon receiving this information, he stated: "It means that you have had three children while you have been on assistance? We call them CAP children. Well, I am not going to comment on that but it seems to be against the whole welfare reform program that you have continued to have children while you are on assistance and not supporting them." (ROR, Volume II, p. 5.) Ellison apparently claims that the hearing officer's probing inquiry at the hearing was not pursued by the hearing officer in his final decision, thereby indicating bias. The second indication of bias, according to Ellison, is that the hearing officer questioned DSS about its justification for requiring Davis to report to the Department of Labor's contractor, METC, yet nothing of this interchange is reflected in the decision. (ROR, Volume II, pp. 10-11.)
In Breiner v. State Dental Commission, 57 Conn. App. 700, 706 (2000), the Appellate Court has recently summarized the standard for a finding of bias by a hearing officer as follows:
 [T]o prove bias as a ground for disqualification, the plaintiff must show more than an adjudicator's announced previous position about law and policy. . . . He must make a showing that the adjudicator has prejudged adjudicative facts that are in dispute.
(Citations omitted; emphasis added; internal quotation marks omitted.) Clisham v. Board of Police Commissioners, supra, 362. The bias must be so prevalent that it is "too high to be constitutionally tolerable."
(Internal quotation marks omitted.) Id.
Applying these principles, the claim of bias must be rejected. While the hearing officer plainly set forth his views on children born to TFA beneficiaries and on welfare reform in general, the plaintiff has not shown that the hearing officer prejudged the evidence regarding Ellison's and Davis' compliance with the TFA's employment service rules. His thorough questioning of DSS representatives about Davis' required meetings demonstrates that he was not prejudiced, not that he was prejudiced.
Ellison received notice of the right to a hearing concerning termination of her benefits. (ROR, Volume I, pp. 34, 35.) She also received the two page fair hearing summary in advance of the hearing. Nevertheless, Ellison claims error because she did not receive the attachments to the fair hearing summary until the day of the hearing.[3]
CT Page 9474
Ellison seeks too much from the requirements of notice. Under Goldbergv. Kelly, 397 U.S. 267 (1970), all that is constitutionally required is a statement of the reasons for the action. That was provided in the notice and the fair hearing summary citing the legal bases for the termination. While the notice includes a section that is not relevant to Ellison's situation, the other cited regulations in the notice were certainly sufficient and gave proper notice.
DSS' failure to supply the attachments to the fair hearing summary was not a constitutional violation. All that is required is "notice reasonably calculated, under the circumstances, to apprize [her] of the pendency of the action and afford [her] an opportunity to present objections." Mullane v. Central Hanover Bank and Trust, 339 U.S. 306, 314
(1950). Here, too, Ellison stated at the hearing that she was familiar with the attachments upon receiving them. (ROR, Volume II, p. 4.)
Ellison was charged with the duty of finding out the full extent of her case at DSS, as is true for any civil proceeding. See Gardebring v.Jenkins, 485 U.S. 515 (1988) (due process does not require notice informing recipients of former AFDS "lump sum income" rule and the methods for its avoidance — recipient charged with knowledge of law); Volck v. Muzio, 204 Conn. 507, 520 (1987) (failure to inform consequences of refusal to submit to chemical alcohol tests does not bar suspension of driver's license).
Ellison next challenges DSS' conciliation process. Ellison attacks the conciliation meeting on the ground that DSS did not discuss good cause with her in detail. The DSS Uniform Policy Manual § 8530.5(A) ("UPM") allows for conciliation before an "adverse action" is taken, to settle "disputes, disagreements and/or misunderstandings." It occurs before a penalty is imposed, such as the termination of TFA benefits. UPM § 8530.5(C). The issue at Ellison's conference was whether she and Davis had good cause for failure to comply with employment service requirements.[4]
The record indicates that, at the meeting, Ellison was asked if she and Davis were in compliance with the employment services requirements. Ellison replied affirmatively. She was then asked to submit proof of compliance after the meeting, but none was ever produced. Under these circumstances, DSS was not required to engage in an extensive dialog regarding good cause for failure to comply with the employment services program at the conciliation hearing since Ellison articulated that she and Davis were indeed complying with the program. In any event, an inappropriate conciliation hearing cannot lead to the extension of benefits. UPM § 8530.50(F). CT Page 9475
The final issue raised by Ellison is whether she had demonstrated good cause as required by UPM § 8560 for failure to meet the employment service requirements of UPM § 8515(G) and (L) and whether the hearing officer erred in not relying exclusively upon her evidence. This issue must be determined under the substantial evidence test. As stated in O'Callaghan v. Commissioner of Social Services, 53 Conn. App. 191, 203
(1999):
 Judicial review of the decision of an administrative agency is limited. . . . [W]e must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Burinskas v. Dept. of Social Services, 240 Conn. [141,] 146-47 [(1997)].
(Citations omitted; internal quotation marks omitted.)
In Domestic Violence Services of Greater New Haven v. FOIC,47 Conn. App. 466, 469-70 (1998), the court also discussed the standard of review as follows:
The scope of permissible review is governed by § 4-183(j) and is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [agency]. . . . The conclusion reached by the [agency] must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. CT Page 9476
(Citations omitted; footnote omitted; internal quotation marks omitted.)
On reviewing the record, the court concludes that the hearing officer did not act unreasonably, arbitrarily, illegally or in abuse of his discretion in determining that the penalty of UPM § 8530.55(B)(1), terminating Ellison's benefits, was applicable. Ellison and Davis were obliged to establish "good cause" for their non-compliance, where "good cause" is defined as a circumstance "beyond the participant's control," preventing him or her from complying with the employment services requirements. UPM § 8530.60(A).[5]
The record reflects the following relevant facts. With respect to Ellison, on August 19, 1998, she entered into a family independence plan in which she promised to complete an employment services activities log every day. (ROR, p. 11.) Six weeks later, Ellison admittedly did not come to her required meetings at the job club nor file her job log. (ROR, Volume I, p. 19; ROR, Volume II, p. 18.) This was apparently due to child care problems in one instance and in another was due to the illness of her son. There is nothing of record to support either the babysitting problem nor the child's illness. According to the record, Ellison stated that she had child care and back-up child care arranged and therefore did not need assistance. (ROR, Volume I, p. 12.)
In October of 1998, Ellison reported that her pregnancy caused a problem which prevented her from attending her third job club meeting. (ROR, Volume II, p. 18.) The note from Ellison's obstetrician is dated March 31, 1999. (ROR, Volume I, p. 37.) It was written after delivery and not at the time of the missed appointments in October. At the hearing, Ellison admitted that she never informed DSS or METC that she had a medical condition caused by her pregnancy. (ROR, Volume II, p. 23.) In addition, she never supplied the information requested at the conciliation meeting to demonstrate that she was in compliance. The letter from her physician does not excuse her attendance but merely states that she had a difficult pregnancy. (ROR, Volume I, p. 37.)
With regard to Davis, he also repeatedly missed his job counseling meetings. He was given further dates, but did not appear and did not contact the meeting coordinator. (ROR, Volume I, pp. 22, 23; ROR, Volume II, p. 9.) When he filed his independence plan on August 31, 1998, he was unemployed and promised to comply with all employment services appointments. (ROR, Volume I, p. 17.) The fact that he was unemployed in August, 1998 and signed the independence plan supports the fair hearing officer's conclusion that the job counseling meeting was mandatory.
The fair hearing officer had a reasonable basis to conclude that DSS CT Page 9477 correctly terminated TFA benefits. (ROR, Volume I, p. 4.) Since there is substantial evidence in the record to support the agency conclusions, the agency's decision is affirmed and the plaintiffs administrative appeal is hereby dismissed.
Henry S. Cohn, Judge