CHARLES RAY JONES *v.* CONNECTICUT
MEDICAL EXAMINING BOARD
(AC 31675)

DiPentima, C. J., and Bishop and Gruendel, Js.

Argued April 20—officially released June 21, 2011

*Elliott B. Pollack*, with whom were *Bonnie L. Heiple* and, on the brief, *Michael Kurs*, for the appellant (plaintiff).

*Tanya Feliciano DeMattia*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, former attorney general, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Charles Ray Jones, M.D., appeals from the judgment of the Superior Court sustaining in part his appeal from the decision of the defendant, the Connecticut medical examining board. In this

appeal, the plaintiff contends that (1) the defendant violated his right to due process by disciplining him on a basis that was not set forth in the statement of charges presented by the department of public health (department), (2) the bias of a member of the medical hearing panel deprived him of his due process right to an impartial tribunal and (3) the court improperly concluded that the preponderance of the evidence standard of proof governs revocation proceedings before the defendant. We affirm the judgment of the Superior Court.

The record reveals the following relevant facts. The plaintiff is a physician and surgeon licensed to practice medicine in Connecticut. The defendant is a state agency within the meaning of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. On August 29, 2005, the department presented the defendant with a statement of charges against the plaintiff's license pursuant to General Statutes (Rev. to 2005) § 19a-17[1] and General Statutes § 20-

---

[1] General Statutes (Rev. to 2005) § 19a-17 provides in relevant part: "(a) Each board or commission established under chapters 369 to 376, inclusive, 378 to 381, inclusive, and 383 to 388, inclusive, and the Department of Public Health with respect to professions under its jurisdiction which have no board or commission may take any of the following actions, singly or in combination, based on conduct which occurred prior or subsequent to the issuance of a permit or a license upon finding the existence of good cause: (1) Revoke a practitioner's license or permit; (2) Suspend a practitioner's license or permit; (3) Censure a practitioner or permittee; (4) Issue a letter of reprimand to a practitioner or permittee; (5) Place a practitioner or permittee on probationary status and require the practitioner or permittee to: (A) Report regularly to such board, commission or department upon the matters which are the basis of probation; (B) Limit practice to those areas prescribed by such board, commission or department; (C) Continue or renew professional education until a satisfactory degree of skill has been attained in those areas which are the basis for the probation; (6) Assess a civil penalty of up to ten thousand dollars . . . .

"(e) As used in this section, the term 'license' shall be deemed to include the following authorizations relative to the practice of any profession listed in subsection (a) of this section: (1) Licensure by the Department of Public Health; (2) certification by the Department of Public Health; and (3) certification by a national certification body. . . ."

13c.[2] The two counts contained therein alleged that the plaintiff violated the applicable standard of care in various respects in his treatment of two minor children.[3]

As the court found in its memorandum of decision, a three member medical hearing panel; see General Statutes (Rev. to 2005) § 20-8a (c); comprised of two physicians and one layperson thereafter "conducted eleven days of hearings over a fourteen month period. The [defendant] then reviewed the panel's proposed decision and, in a December 18, 2007 memorandum of decision, made the following findings. The plaintiff holds a Connecticut physician and surgeon license. On or about December 17, 2003, the plaintiff consulted by telephone with the mother of minor children S and E, who were living in Nevada. At that time, the plaintiff diagnosed E as having gestational Lyme disease. The plaintiff took several other actions prior to first examining the children on May 21, 2004. On January 5, 2004, the plaintiff prescribed Doxycycline for E's Lyme disease. On March 18, 2004, the plaintiff prescribed Zithromax for S. On March 26, 2004, the plaintiff made recommendations to the principal of S's school for S's education based on a provisional diagnosis of late stage Lyme disease.

---

[2] General Statutes § 20-13c provides in relevant part: "The board is authorized to restrict, suspend or revoke the license or limit the right to practice of a physician or take any other action in accordance with section 19a-17, for any of the following reasons . . . (4) illegal, incompetent or negligent conduct in the practice of medicine; (5) possession, use, prescription for use, or distribution of controlled substances or legend drugs, except for therapeutic or other medically proper purposes . . . ."

Although § 20-13c has been amended since the time the statement of charges was presented; see Public Acts 2005, No. 05-275, § 21; the changes, including the redesignation of a certain subsection, are not relevant to this appeal. We refer herein to the current revision of the statute.

[3] In both the administrative proceeding before the defendant and the appeal before the Superior Court, the parties and the court preserved the confidentiality of the minor children's identities. We do the same in this appeal.

"At the May 21, 2004 examination, the plaintiff wrote a diagnosis for E of possible gestational Lyme disease. The plaintiff treated both children with a continuous prescription of Amoxicillin until March, 2005, and then continuously with Omnicef. After the May 21, 2004 exam[ination], the plaintiff did not examine the children until April 11, 2005, nor did he make any arrangements for another physician to monitor their medication. At the April 11, 2005 examination, the plaintiff ordered a series of tests for Lyme disease, including the Western Blot tests, and other pathogens. All tests were negative except, in the case of S, for 'Mycoplasma fermetans and a weakly positive titer for Streptococcus A antibodies' and, in the case of E, a positive antibody finding for Epstein-Barr Virus.

"The [defendant] found that the plaintiff violated the standard of care for both children in that he (1) prescribed an antibiotic to a patient he did not know and had never examined; (2) prescribed antibiotics for nearly a year without repeat examinations and without any arrangement with another physician to monitor the patient for the side effects of long-term antibiotic therapy; and (3) diagnosed a disease in both children when the exposure risk was extremely low, the medical history was nonspecific, the signs and symptoms were nonspecific, and the laboratory tests were negative. In addition, in the case of S, the [defendant] found that the plaintiff violated the standard of care by making an educational recommendation for a child he did not know and had never examined. The [defendant] also found, without specifying whether it was a violation of the standard of care, that the plaintiff failed to reconsider the diagnosis of Lyme disease for S and E in light of the negative Western Blot tests obtained in April, 2005.

"As a result of these findings, the [defendant] ordered a reprimand, imposed fines totaling $10,000, and placed

the plaintiff on probation for two years. In addition, the [defendant] required the appointment of a physician monitor to conduct regular reviews of the plaintiff's patient records and meetings with the plaintiff. . . . On January 2, 2008, the plaintiff filed a motion for reconsideration alleging that a member of the panel . . . John Senechal [a physician], was biased against the plaintiff. The [defendant] denied the motion in a brief ruling stating principally that the alleged bias did not relate to the findings and conclusions in the memorandum of decision." (Citation omitted.)

The plaintiff subsequently commenced an administrative appeal of that decision in the Superior Court.[4] Following a hearing, the court determined that the record lacked substantial evidence to support the defendant's findings that the plaintiff diagnosed E with gestational Lyme disease during a telephone consultation on December 17, 2003, and that the plaintiff's care for E deviated from the applicable standard of care in prescribing an antibiotic to a patient that he did not know and never had examined. The court affirmed the decision of the defendant in all other respects and remanded the matter to the defendant for further proceedings pursuant to General Statutes § 4-183 (j). From that judgment, the plaintiff appeals.[5]

I

The plaintiff first claims that the defendant violated his right to due process by disciplining him on a basis that was not set forth in the statement of charges presented to it by the department. We disagree.

[4] In hearing the plaintiff's appeal from the decision of the defendant, the Superior Court acts as an appellate body. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 244 n.12, 796 A.2d 1164 (2002).

[5] Our Supreme Court has held that a remand pursuant to § 4-183 (j) is a final judgment for purposes of appeal. See *Hogan* v. *Dept. of Children & Families*, 290 Conn. 545, 557–58, 964 A.2d 1213 (2009).

The standard of review governing administrative agency rulings is well established. "Judicial review of an administrative decision is a creature of statute . . . and [§ 4-183 (j)] permits modification or reversal of an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error or law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . . We have stated that not all procedural irregularities require a reviewing court to set aside an administrative decision . . . . The complaining party has the burden of demonstrating that its substantial rights were prejudiced by the error." (Citations omitted; internal quotation marks omitted.) *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control,* 270 Conn. 778, 787–88, 855 A.2d 174 (2004).

## A

Before addressing the merits of the plaintiff's due process claim, we first must ascertain the analytical basis thereof. In his appellate brief, the plaintiff identifies no statutory basis underlying the claim and instead devotes his discussion to decisional law exclusively, whereas the defendant maintains that the pertinent notice requirements governing the claim are those contained in General Statutes § 4-177 (b), rather than General Statutes § 4-182 (c).[6] On the record before us, we disagree with the defendant.

[6] General Statutes § 4-177 (b), which governs contested cases generally, provides in relevant part: "The notice [of the hearing] shall be in writing and shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the

Our Supreme Court has emphasized "the difference between the notice requirements pertaining to the issuance of a license, which mandate only 'a short and plain statement of the matters asserted'; General Statutes § 4-177 (b) (4); and the notice requirements relating to the revocation of a license, which mandate 'notice . . . of facts or conduct' warranting revocation of the license. General Statutes § 4-182 (c)." *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control,* supra, 270 Conn. 810. Procedurally, notice under § 4-182 (c) is a precursor to the subsequent notice required by § 4-177 (b). "Section 4-182 (c) requires an agency to give a licensee, *prior* to the institution of agency proceedings, written notice of conduct warranting the revocation of its license and an opportunity to show compliance with all of the legal requirements for the retention of the license." (Emphasis added.) Id., 801. By contrast, § 4-177 requires an agency to "give the licensee notice of a formal revocation proceeding . . . ." Id., 812. Specifically, § 4-177 (b) requires that notice of a contested hearing include the following: "(1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; and (4) a short and plain statement of the matters asserted. . . ." As this court recently held, "notice of the formal revocation hearings, *after* institution of the agency proceedings, must comply with § 4-177, not § 4-182 (c)." (Emphasis in original.) *Spitz* v. *Board of*

statutes and regulations involved; and (4) a short and plain statement of the matters asserted. . . ."

General Statutes § 4-182 (c) provides in relevant part: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. . . ."

*Examiners of Psychologists,* 127 Conn. App. 108, 116 n.11, 12 A.3d 1080 (2011).

The critical question, then, is precisely what notice was provided to the plaintiff. It is undisputed that the first communication to the plaintiff contained in the record before us is the department's statement of charges dated August 29, 2005. The statement of charges did not articulate "a short and plain statement of the matters asserted"; General Statutes § 4-177 (b) (4); but instead contained a detailed description of the facts and conduct alleged to give rise to a violation of § 20-13c, as required by § 4-182 (c). Moreover, the statement of charges did not provide the plaintiff with notice of either "the time, place, and nature of the hearing" or "the legal authority and jurisdiction under which the hearing is to be held," as required by § 4-177 (b) (1) and (2). Thus, the statement of charges on its face comports with the notice requirements of § 4-182 (c), rather than § 4-177 (b).

In addition, the defendant in its December 18, 2007 memorandum of decision expressly found that "[o]n October 13, 2005, a notice of hearing was sent via certified mail and first class mail to the [plaintiff], scheduling a hearing for December 1, 2005."[7] That finding indicates that the defendant provided the plaintiff with notice of the formal revocation proceedings subsequent to the issuance of written notice of the conduct warranting the revocation of his license contained in the statement

---

[7] The record before us does not contain a copy of the October 13, 2005 notice of hearing. Although the defendant's December 18, 2007 memorandum of decision states that said notice was introduced as "Board [exhibit] 2," the return of record provided by the defendant indicates that this exhibit was "omitted by stipulation of [the] parties pursuant to . . . § 4-183 (g)." We thus credit the defendant's uncontroverted factual finding that it provided the plaintiff with a formal notice of the scheduled hearing on October 13, 2005, approximately one and one-half months after the department first presented the defendant with a statement of charges against the plaintiff's license.

of charges. In light of that undisputed procedural history, we conclude that the statement of charges does not qualify as notice of the formal revocation hearing under § 4-177 (b). Instead, the plaintiff's claim concerning the adequacy of the notice provided in the statement of charges properly is evaluated under the rubric of § 4-182 (c). *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control,* supra, 270 Conn. 812.

## B

As our Supreme Court has explained, "due process requires that the notice [pursuant to § 4-182 (c)] must advise the party of the facts or conduct alleged to be in violation of the law and must fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law. . . . [T]he notice of charges against a practitioner to which he is to answer before the board should state them with sufficient particularity so that he may be fairly apprised of the nature of the offense with which he is charged." (Citations omitted; internal quotation marks omitted.) *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 535, 560 A.2d 403 (1989).

The plaintiff's claim centers on the defendant's finding that he violated the applicable standard of care by "diagnosing a disease in a very low risk patient, with nonspecific history, nonspecific signs and symptoms, and negative laboratory tests." In paragraphs 5 (d) and (e) of the statement of charges, the department alleged that the plaintiff "diagnosed Lyme disease when S's history did not support the diagnosis" and that he "made a diagnosis of Lyme disease . . . when the patient's laboratory tests were negative and his signs and symptoms were nonspecific." Likewise, paragraphs 10 (c) and (d) allege that the plaintiff "based his diagnosis of Lyme disease when E's history did not support the

diagnosis" and that he "made a diagnosis of Lyme disease . . . when the patient's laboratory tests were negative and her signs and symptoms were nonspecific." We concur with the court's assessment that "[t]he findings by the [defendant] of a violation of standard of care track these allegations closely except for the fact that the [defendant] also found that the plaintiff had made the diagnosis 'when the exposure risk was extremely low.' "

Thus, the only variance we perceive is that between the aforementioned charges and the defendant's finding that the plaintiff diagnosed a disease in the children when, inter alia, their exposure risk was extremely low. Because the plaintiff "can claim no relief from the court unless he can show that he was substantially prejudiced" by that variance; *Levinson* v. *Board of Chiropractic Examiners*, supra, 211 Conn. 536; our inquiry is into whether he has met that burden.

The plaintiff submits that the variance between the statement of charges and the defendant's finding prejudiced his ability to mount a defense thereto. Specifically, he argues that, absent the variance, he could have defended himself on the basis that he properly diagnosed an infectious disease in the patient. Yet that is precisely the defense that was offered in the administrative proceeding below. The court found that the plaintiff in the hearing before the defendant "disputed continuously" the conclusion that he improperly diagnosed an infectious disease in the children. The record before us contains ample evidence substantiating that finding. It includes fifty detailed exhibits introduced by the plaintiff totaling 944 pages and numerous hearing transcripts over the course of twelve days in which the plaintiff presented a vigorous defense. Most significantly, the record demonstrates that the plaintiff himself introduced evidence on the issue of the children's risk of exposure. For example, on March 23, 2006, the plaintiff

testified that since the children's mother "had a history of probable Lyme disease . . . her children . . . had the possibility of gestational exposure and breast milk exposure to the Lyme bacteria . . . ." The plaintiff also testified that the "children had exposure to ticks, not only in Nevada but also on a camping trip that they had taken . . . where both of the children had documented tick attachments . . . ." Because the plaintiff offered evidence on the children's risk of exposure in an attempt to demonstrate that he properly had diagnosed an infectious disease in them, he cannot complain of a lack of notice that the defendant would evaluate that consideration. See *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 94, 596 A.2d 374 (1991). We therefore conclude that the plaintiff has not established that he was substantially prejudiced by the slight variance between the statement of charges and the defendant's findings.

## II

The plaintiff next claims that the bias of a member of the medical hearing panel deprived him of a fair administrative proceeding. He maintains that Senechal, a pediatrician who served on the panel during the revocation hearing, possessed a profound bias against physicians who treat chronic Lyme disease.[8] That bias, the plaintiff contends, violated his due process right to an impartial tribunal. We do not agree.

Certain well established principles guide our analysis of the plaintiff's claim. "At the core of due process is the requirement for an impartial tribunal. . . . Due process demands . . . the existence of impartiality on the part of those who function in judicial or quasi-judicial

---

[8] It is undisputed that Senechal was not a member of the defendant and thus did not vote on the adoption of the panel's proposed decision by the defendant.

capacities. . . . It has been generally recognized, however, that due process does not require that members of administrative agencies adhere in all respects to the exalted standards of impartiality applicable to the judiciary. . . . The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator. . . . A presumption of impartiality attends administrative determinations, and the burden of establishing a disqualifying interest on the part of an adjudicator rests upon the one seeking disqualification. . . . To overcome the presumption, the plaintiff in this case must demonstrate actual bias, rather than mere potential bias, of the [panel] members challenged, unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable." (Citations omitted; internal quotation marks omitted.) *Rado* v. *Board of Education*, 216 Conn. 541, 556, 583 A.2d 102 (1990); see also *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, 291 Conn. 242, 262, 967 A.2d 1199 (2009) (plaintiff has burden of establishing disqualifying interest).

Our Supreme Court has held that to prove bias, the plaintiff "must make a showing that the [panel member] has prejudged adjudicative facts that are in dispute. . . . A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing. . . . The test for disqualification has been succinctly stated as being whether a disinterested observer may conclude that [the panel member] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." (Citations omitted; internal quotation marks omitted.) *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 362, 613 A.2d 254 (1992). "The mere fact that [panel members] have opinions regarding the appropriate standards of practice does not constitute bias . . . ." *Breiner* v. *State Dental*

*Commission,* 57 Conn. App. 700, 706, 750 A.2d 1111 (2000).

In addition, we note that "[a] determination of the existence or absence of actual bias is a finding of fact." (Internal quotation marks omitted.) *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors,* supra, 291 Conn. 263. It is axiomatic that "[t]his court will not reverse the factual findings of the trial court unless they are clearly erroneous." *Solomon* v. *Connecticut Medical Examining Board,* 85 Conn. App. 854, 865, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Gordon* v. *Tobias,* 262 Conn. 844, 849, 817 A.2d 683 (2003).

The following additional facts are relevant to the plaintiff's claim. After commencing this administrative appeal in the Superior Court, the plaintiff filed a motion for an evidentiary hearing on the issue of Senechal's alleged bias, which the court granted. At that hearing, the plaintiff offered the testimony of Tracy Will and Blake Will, whose seventeen year old son was seen on two occasions by Senechal in 2007; the defendant submitted the testimony of Senechal.[9] As the court found in its memorandum of decision: "Tracy and Blake

[9] In their sworn testimony, Tracy Will and Blake Will acknowledged that, months after their two encounters with Senechal, they attended the plaintiff's revocation hearing before the defendant on December 18, 2007, "in support of" the plaintiff. Tracy Will also testified that her son later became a patient of the plaintiff.

Will testified, in sum, that when Senechal, a pediatrician, had treated their son in 2007 for symptoms diagnosed by another doctor as Lyme disease, Senechal had made coarse remarks about doctors who treat Lyme disease, calling them, among other things, quacks and charlatans. Senechal testified that he did not remember using the terms 'quacks' and 'charlatans.' He acknowledged mentioning in a critical vein that some doctors not specializing in infectious disease or even some nonphysicians were treating Lyme disease. He contended that it has never been proven that there is such a condition as chronic Lyme disease. Nonetheless, he maintained that he had not prejudged any of the issues in the case, which was ongoing at the time of his examination of the Wills' son. Senechal explained that, in his view, the administrative hearing was not about Lyme disease but rather whether the plaintiff had conducted a 'good faith examination.'[10] The court reconciles the competing testimony by concluding that Senechal made intemperate remarks about the treatment of Lyme disease but focused on [doctors] who were not specialists in infectious disease."

Discussion of Senechal's opinion that it has not "been proven that there is such a condition as chronic Lyme disease" obscures the precise issue before us. "[A] decisionmaker [is not] disqualified simply because he has

[10] Senechal's precise testimony on that point was as follows: "The [plaintiff's revocation] hearing . . . had to do with his responsibilities in the care of a patient vis-à-vis treating over the phone, treating without examination, taking someone out of school—out of a school district 3000 miles away without even examining a patient. . . . I was asked as a member of the panel just to address the issue, the charges at hand. And I felt that I and the other panel members and the [defendant] just looked at those charges. All the Lyme stuff was almost a smokescreen that really didn't, in my opinion, didn't belong in the case because that's what the case was not—truly the charge wasn't about Lyme disease, the charge was about whether [the plaintiff] treated over the phone, whether his records were complete, whether . . . he called people 3000 miles away and gave a diagnosis over the phone without . . . a full, fair and what they call in other states, a good faith examination."

taken a position, even in public, on a policy issue related to the dispute, in the absence of a showing that he is not capable of judging a particular controversy fairly on the basis of its own circumstances." (Internal quotation marks omitted.) *Breiner* v. *State Dental Commission*, supra, 57 Conn. App. 707, citing *Hortonville Joint School District No. 1* v. *Hortonville Education Assn.*, 426 U.S. 482, 493, 96 S. Ct. 2308, 49 L. Ed. 2d 1 (1976).

Rather, as the court observed, the "ultimate question" in evaluating the plaintiff's allegation of bias is whether Senechal had "prejudged adjudicative facts that [were] in dispute" and were to be decided at the hearing. *Clisham* v. *Board of Police Commissioners*, supra, 223 Conn. 362. Despite the plaintiff's protestations to the contrary, this case is not about the diagnosis of chronic Lyme disease—it is about the plaintiff's diagnosis and treatment of an infectious disease in two children whom he had not examined. We concur with the assessment of the court that "the [defendant's] findings that the plaintiff violated the standard of care do not address the appropriate method of diagnosing and treating Lyme disease. In fact, the statement of violations of the standard of care does not even mention Lyme disease. . . . Rather, the [defendant] found that the plaintiff had violated general standards of medical care by prescribing antibiotics and making educational recommendations without examining the patient, prescribing long-term antibiotic therapy without arranging to have another physician monitor the patient, and diagnosing a disease when the exposure risk was low, the medical history, signs, and symptoms were nonspecific, and the laboratory tests were negative. These standards would presumably apply to virtually any physician in any specialty. Thus, the fact that Senechal may have had hardened views about the practice of some people treating Lyme disease would not necessarily reveal any bias as to whether the plaintiff had violated the general

standards of medical care at issue in this case." (Citation omitted.)

To overcome the presumption of impartiality; *Rado* v. *Board of Education*, supra, 216 Conn. 556; it was incumbent on the plaintiff to demonstrate that Senechal had prejudged adjudicative facts in dispute. In its memorandum of decision, the court found that "there is no evidence that Senechal had prejudged the issues in this case. The record reveals no instance in which Senechal had expressed any views about the plaintiff or how the plaintiff practiced medicine. There is also no evidence that Senechal had made any outside statements or harbored any preconceived notion about whether the plaintiff had violated general medical standards of care, which was the critical issue in this case. In fact, the findings reveal that, on a number of points, the board agreed with the plaintiff on the historical facts or with his arguments that he did not violate the standard of care." On our review of the record, we agree. Accordingly, the court's finding that the plaintiff failed to demonstrate actual bias on the part of Senechal is not clearly erroneous.

### III

The plaintiff's final claim is that the court improperly concluded that the preponderance of the evidence standard of proof governs revocation proceedings before the defendant. He renews his argument before the Superior Court that "[g]iven the similarity between attorney and physician disciplinary cases and the fact that the clear and convincing standard is applicable to attorney cases, the same standard should be applied in physician cases."

The plaintiff's contention ignores the fact that attorney discipline proceedings, unlike the present matter, are not governed by the UAPA. The statewide grievance committee "is an arm of the court, and is not a body

in which the legislature has reposed general powers of administration of a particular state program with which it has been given statutory authority to act for the state in the implementation of that program." (Internal quotation marks omitted.) *Sobocinski* v. *Statewide Grievance Committee,* 215 Conn. 517, 526, 576 A.2d 532 (1990). It "patently is not an administrative agency as defined in . . . § 4-166 (1) of our UAPA." *Brunswick* v. *Statewide Grievance Committee,* 103 Conn. App. 601, 609–10, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007).

In contrast, the defendant is an administrative agency within the meaning of the UAPA. *Dragan* v. *Connecticut Medical Examining Board,* 223 Conn. 618, 619, 613 A.2d 739 (1992). In *Goldstar Medical Services, Inc.* v. *Dept. of Social Services,* 288 Conn. 790, 821, 955 A.2d 15 (2008), our Supreme Court held that "[i]n the absence of state legislation prescribing an applicable standard of proof . . . the preponderance of the evidence standard is the appropriate standard of proof in administrative proceedings" under the UAPA.[11] In this appeal, we have neither been presented with nor found any statutory authority requiring the clear and convincing standard of proof to be applied in revocation proceedings before the defendant.

---

[11] In so concluding, the court recognized that the preponderance of the evidence standard applies in federal administrative proceedings. *Goldstar Medical Services, Inc.* v. *Dept. of Social Services,* supra, 288 Conn. 819; accord *Jones for Jones* v. *Chater,* 101 F.3d 509, 512 (7th Cir. 1996) ("preponderance of the evidence . . . is the default standard in . . . administrative proceedings"); *Collins Securities Corp.* v. *Securities & Exchange Commission,* 562 F.2d 820, 823 (D.C. Cir. 1977) (traditional standard of proof in federal administrative proceeding is preponderance standard). Notably, the United States Supreme Court expressly has "upheld use of the preponderance standard" in administrative proceedings in which "[t]he sanctions imposed . . . included an order permanently barring an individual from practicing his profession." *Herman & MacLean* v. *Huddleston,* 459 U.S. 375, 390, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983), citing *Steadman* v. *Securities & Exchange Commission,* 450 U.S. 91, 101 S. Ct. 999, 67 L. Ed. 2d 69 (1981).

It is axiomatic that this court, as an intermediate body, is "bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). Proper regard for this court's role as an intermediate appellate tribunal precludes our reconsideration of the aforementioned precedent of this state's highest court. In light of that precedent, the plaintiff's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.