MINNIE GONZALEZ *v.* STATE ELECTIONS
ENFORCEMENT COMMISSION
(AC 33651)

DiPentima, C. J., and Beach and Robinson, Js.

Argued March 11—officially released September 10, 2013

*Thomas J. Weihing*, with whom, on the brief, was *John T. Bochanis*, for the appellant-cross appellee (plaintiff).

*Maura Murphy Osborne*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee-cross appellant (defendant).

*Opinion*

ROBINSON, J. The plaintiff state representative, Minnie Gonzalez, appeals from the judgment of the trial court denying in part her appeal from the decision of

the defendant, the State Elections Enforcement Commission, finding that she committed four violations of being knowingly present during the execution of an absentee ballot in violation of General Statutes § 9-140b (e). The trial court reversed the finding as to two of the four violations and remanded the matter to the defendant to reconsider the fine assessed. On appeal, the plaintiff claims that the two remaining violations should be reversed because (1) the trial court erred in failing to conclude that her due process right to a fair hearing was violated when the hearing officer and the defendant prejudged her case; (2) the trial court erred in finding that the hearing officer's decision was not arbitrary and capricious because (a) there was not substantial evidence to support the two remaining violations and (b) the hearing officer ignored the defendant's failure to provide exculpatory statements and made erroneous factual findings pertaining to the failure; (3) the trial court erred in finding that the hearing officer properly excluded certain written statements; and (4) the plaintiff was substantially prejudiced by the delay in prosecution. The defendant cross appeals claiming that the trial court erred in reversing two of the four violations found by the defendant because there was substantial evidence to support those violations. We affirm the judgment on the appeal and reverse the judgment on the cross appeal.

The following facts, as found by the hearing officer, and procedural history are necessary for our resolution of this appeal and cross appeal. On November 1, 2006, Michael Barry, a Hartford resident, filed a complaint with the defendant alleging that on the previous day, while completing an absentee ballot at the clerk's office at the city hall in Hartford, he observed the plaintiff, who was seeking reelection, talking to four people in Spanish while at least three of them were completing

their absentee ballots.[1] He further alleged that after one of the voters, Raul Rivera, completed his ballot, the plaintiff took his envelope to the counter where voters signed in. Barry stated that he called the town clerk and the defendant to report what he had witnessed.

A hearing before hearing officer Stephen F. Cashman took place on this matter on June 10, 2009, July 9, 2009, and July 17, 2009.[2] The plaintiff was alleged to have committed one violation of § 9-140b (d) for possessing the absentee ballot of Raul Rivera, and five violations of § 9-140b (e) for being knowingly present when Raul Rivera, Jennie Rivera, Jose Echevarria, Maria Echevarria and Barry executed their absentee ballots.[3]

The hearing officer issued his final decision on December 16, 2009. He concluded that the plaintiff had been knowingly present when Raul Rivera, Jennie

[1] The people were later identified as Raul Rivera, Jennie Rivera, Jose Echevarria and Maria Echevarria. Jennie Rivera is also referred to as Jenny. Raul Rivera and Jennie Rivera are not related. Jose Echevarria and Maria Echevarria are married.

[2] The transcript of the June 10, 2009 hearing was not a part of the record before the trial court. Therefore, it is not a part of the record on appeal.

[3] General Statutes § 9-140b (d) provides: "No person shall have in his possession any official absentee ballot or ballot envelope for use at any primary, election or referendum except the applicant to whom it was issued, the Secretary of the State or his or her authorized agents, any official printer of absentee ballot forms and his designated carriers, the United States Postal Service, any other carrier, courier or messenger service recognized and approved by the Secretary of the State, any person authorized by a municipal clerk to receive and process official absentee ballot forms on behalf of the municipal clerk, any authorized primary, election or referendum official or any other person authorized by any provision of the general statutes to possess a ballot or ballot envelope."

General Statutes § 9-140b (e) provides: "No (1) candidate or (2) agent of a candidate, political party or committee, as defined in section 9-601, shall knowingly be present when an absentee ballot applicant executes an absentee ballot, except (A) when the candidate or agent is (i) a member of the immediate family of the applicant or (ii) authorized by law to be present or (B) when the absentee ballot is executed in the office of the municipal clerk and the municipal clerk or an employee of the municipal clerk is a candidate or agent."

Rivera, Jose Echevarria and Maria Echevarria executed their absentee ballots, but not when Barry had executed his absentee ballot. He further found that there was insufficient evidence in the record to support a finding that the plaintiff had possessed an absentee ballot issued to Raul Rivera. The hearing officer assessed a fine of $4500 for the four violations. The plaintiff appealed to the Superior Court. The trial court reversed the violations with respect to Jose Echevarria and Maria Echevarria and sustained the violations with respect to Raul Rivera and Jennie Rivera. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

Before we review the claims presented in the appeal and cross appeal, we set forth the standard governing our review of administrative agency rulings. "Judicial review of an administrative decision is a creature of statute . . . and [General Statutes § 4-183 (j)] permits modification or reversal of an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error or law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . . The complaining party has the burden of demonstrating that its substantial rights were prejudiced by the error." (Internal quotation marks omitted.) *Jones* v. *Connecticut Medical Examining Board*, 129 Conn. App. 575, 581, 19 A.3d 1264, cert. granted on other grounds, 302 Conn. 921, 28 A.3d 338 (2011).

"Our review of an agency's factual determination is constrained by . . . § 4-183 (j), which mandates that a

court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. . . . This limited standard of review dictates that, [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole." (Internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, 135 Conn. App. 807, 812, 43 A.3d 237 (2012).

"Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Our task is to review the court's decision to determine whether it comports with the Uniform Administrative Procedure Act [UAPA], General Statutes § 4-166 et seq., and whether the court reviewing the administrative agency acted unreasonably, illegally, or in abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Lawendy* v. *Connecticut Board of Veterinary Medicine*, 109 Conn. App. 113, 118, 951 A.2d 13 (2008).

I

THE PLAINTIFF'S APPEAL

A

We first address the plaintiff's claim that the court failed to conclude that her due process rights were violated because the hearing officer had prejudged her

case. Her due process claim arises from her contention that Cashman violated General Statutes § 4-176e,[4] which prevents the same person who investigated a contested matter to be the hearing officer in a contested hearing on the same matter, when he voted to find that there was reason to believe that she had violated the elections statutes, volunteered to be the hearing officer and signed the proposed consent decree. She maintains that those actions rendered Cashman biased and, thus, his participation as the hearing officer in her case was a violation of her due process right to a fair hearing.[5] We disagree.

The following additional procedural history is necessary to resolve this claim. The defendant received Barry's complaint on November 1, 2006. The staff attorney for the defendant, Marc W. Crayton, and lead legal investigator for the defendant, Gilberto Oyola, conducted the investigation into Barry's allegations. During the investigation, Crayton forwarded a copy of the complaint to the plaintiff in a letter dated November 15, 2006. The plaintiff submitted a response to the allegation in a letter dated November 27, 2006. At the defendant's regular meeting on October 10, 2007, five commissioners for the defendant, including Cashman, voted to find that there was reason to believe that the plaintiff had violated one count of § 9-140b (d) and five counts of § 9-140b (e). Cashman volunteered to be the hearing officer for the case.

---

[4] General Statutes § 4-176e provides in relevant part: "Except as otherwise required by the general statutes, a hearing in an agency proceeding may be held before (1) one or more hearing officers, provided no individual who has personally carried out the function of an investigator in a contested case may serve as a hearing officer in that case . . . ."

[5] We note that although the plaintiff did argue in her appeal to the trial court that Cashman had prejudged her case and, thus, was biased, she did not argue to the trial court that § 4-176e was the basis upon which her claim was founded. Because she essentially has raised the same issue before this court, we will review her claim to the extent that it was raised before the trial court.

On June 8, 2009, the plaintiff filed a motion to recuse, seeking to have Cashman disqualified from serving as the hearing officer in the matter. She alleged that Cashman had made an adverse determination in a prior hearing because he participated in the October 10, 2007 vote, which determined that there was reason to believe that she had violated § 9-140b (d) and (e), and because he had volunteered to be the hearing officer. The plaintiff also alleged that it appeared from the proposed settlement agreement that the defendant had presented to the plaintiff, which included a proposed civil penalty of $10,000, that Cashman had taken an active part in the investigation. She concluded that on the basis of these two documents, Cashman should not be permitted to adjudicate a later contested hearing with the same subject matter.

The defendant filed an objection and submitted that Cashman had not made an adverse determination in a prior hearing. It maintained that Crayton and Oyola had conducted the investigation and that Cashman had not taken an active part in it. The defendant further asserted that on the basis of the investigation report completed and written by Crayton and Oyola, the defendant had authorized them to pursue a negotiated settlement pursuant to § 9-7b-42 of the Regulations of Connecticut State Agencies. The defendant stated that Crayton, with no input from Cashman, had drafted the proposed settlement agreement that gave the plaintiff until October 10, 2007, to sign the agreement and pay the civil penalty, and that the plaintiff declined to do so, instead, asserting her right to a hearing. The defendant concluded that the plaintiff was required to overcome the presumption of impartiality by demonstrating actual, rather than potential, bias, and that she had failed to demonstrate actual bias on the part of Cashman.

On June 17, 2009, Cashman denied the plaintiff's motion to recuse by a written order. He noted that the

plaintiff "argued that the recusal request stemmed not from any perception or allegation of personal bias on the part of the undersigned, but rather from the [defendant's] procedures that [the plaintiff] alleges will deny her a fair hearing in this matter. In summary, [the plaintiff] argued that because the undersigned had 'already made an adverse determination in a prior hearing,' he should not preside over subsequent proceedings in this case.

"As communicated at the hearing, the undersigned denied [the plaintiff's] motion to recuse and will remain the hearing officer in this matter. The [defendant's] procedures in its handling of cases, especially those related to preliminary determinations, appointment of hearing officers, and administration of contested hearings, follow the . . . [UAPA] codified in Chapter 54 of the Connecticut General Statutes as well as due process requirements guaranteed by the constitutions of the United States and the State of Connecticut."

Prior to the start of testimony on July 9, 2009, the plaintiff orally renewed her motion to recuse for the same reasons that she had set forth in her written motion. Cashman noted that he previously had denied the motion and submitted a written order. Thus, he denied the motion for the same reasons that had been stated in the written order.

In her posthearing brief, the plaintiff again argued that Cashman should not have been allowed to preside over the hearing because he had made an adverse determination in a prior hearing. She argued that the hearing did not allow the plaintiff to present any evidence, conduct any investigation or present any of her own witnesses or testimony. She maintained that she was prejudiced because the statutes governing the defendant allowed "prejudgment by the same people who adjudicated her case at a later time."

The hearing officer rejected this claim. In the final decision, he reiterated that the procedures followed by the defendant were in compliance with the UAPA and the constitutions of the United States and Connecticut. He stated: "Prior to this hearing, [the plaintiff's] counsel moved to recuse the undersigned since, according to [the plaintiff], the Hearing Officer had prejudged this matter by serving as a member of the [defendant] that found reason to believe that a violation had been committed in this case and subsequently set the matter for a contested hearing. The Hearing Officer denied that motion. [The plaintiff] has presented no new evidence from the hearing to support her allegation that the undersigned failed to act impartially in this matter."

The plaintiff raised this issue again when she appealed to the Superior Court. In its memorandum of decision, the court noted that in order to sustain a due process claim, the plaintiff must make a showing of actual bias. It concluded that the plaintiff had failed to do so. The court found that Cashman had not acted alone in finding that there was reason to believe that the plaintiff had violated the law and that the entire commission had approved the proposed consent order. Moreover, the court found, the hearing took place eighteen months later, presumably after numerous other business matters had intervened, and the hearing officer applied the substantial evidence standard during the hearing, rather than the more lenient reason to believe standard that formed the basis of the initial recommendation. It also noted the hearing officer's finding that the plaintiff had challenged Cashman's impartiality in her posthearing motion, but had presented no new evidence. Accordingly, the court held that "the record reveals no evidence at all of bias or predisposition on the part of the hearing officer" and denied the claim on that ground.

"The applicable due process standards for disqualification of administrative adjudicators do not rise to the heights of those prescribed for judicial disqualification. . . . The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator. . . . Moreover, there is a presumption that administrative board members acting in an adjudicative capacity are not biased. . . . To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable. . . . The plaintiff has the burden of establishing a disqualifying interest." (Internal quotation marks omitted.) *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, 291 Conn. 242, 262, 967 A.2d 1199 (2009).

"Our Supreme Court has held that to prove bias, the plaintiff must make a showing that the [panel member] has prejudged adjudicative facts that are in dispute. . . . A tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing. . . . The test for disqualification has been succinctly stated as being whether a disinterested observer may conclude that [the panel member] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it. . . .

"In addition, we note that [a] determination of the existence or absence of actual bias is a finding of fact. . . . It is axiomatic that [t]his court will not reverse the factual findings of the trial court unless they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in

favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *Jones* v. *Connecticut Medical Examining Board,* supra, 129 Conn. App. 587–88.

To overcome the presumption of impartiality, the plaintiff was required to demonstrate that Cashman had prejudged the facts in this case. See id., 591. In its memorandum of decision, the court found that Cashman acted as one of five commissioners who found reason to believe that the plaintiff had violated the election law and that the entire commission approved the proposed consent order. It further found that the hearing took place nearly eighteen months after the reason to believe finding and proposed consent order, and that the hearing officer applied a more stringent standard in rendering his final decision. The court cited the hearing officer's finding that the plaintiff had provided no new evidence of bias in her posthearing brief. It found that the "record reveals no evidence at all of bias or predisposition on the part of the hearing officer."

On the basis of our review of the record, we agree with the court. Moreover, further undermining the plaintiff's argument is the fact that the hearing officer did not find that she had committed two of the alleged six violations. Accordingly, we conclude that the court's finding that the plaintiff failed to demonstrate that Cashman was biased by prejudging her case is not clearly erroneous and, thus, the plaintiff has not met her burden of proving that her due process rights were violated.[6]

---

[6] The plaintiff, in a cursory fashion, also claims that the defendant's procedure of conducting both an investigation and the adjudicatory hearing is unconstitutional. Because the plaintiff has provided us with no authority or analysis to support this assertion, we conclude that this argument has been inadequately briefed. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim . . . receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed

## B

The plaintiff next claims that the court erred by not finding that the hearing officer's decision was arbitrary and capricious. She maintains that there was not substantial evidence to support the hearing officer's conclusion that she had violated § 9-140b (d) with respect to Raul Rivera and Jennie Rivera, given the testimony of several witnesses who testified that Raul Rivera could not have received and did not receive an absentee ballot, and that the plaintiff was not inside the clerk's office when any of the ballots were being executed. The plaintiff additionally argues that the hearing officer's decision was arbitrary and capricious because he ignored the defendant's failure to disclose exculpatory evidence and made erroneous factual findings regarding that failure. We disagree with both contentions.

### 1

The plaintiff first argues that the hearing officer's decision with respect to Raul Rivera and Jennie Rivera was arbitrary and capricious because there was not substantial evidence to support the violations. The gravamen of the plaintiff's argument is that the hearing officer ignored evidence that contradicted the defendant's position that the plaintiff was knowingly present when Raul Rivera and Jennie Rivera were executing their ballots. Specifically, she maintains that the hearing officer improperly ignored the testimony of Olga Iris Vasquez, the Democratic Registrar of Voters in Hartford, which established that Raul Rivera had never voted in the 2006 election, and the testimony of Diane Williams, Daniel M. Carey and Maria Echevarria, which established that the plaintiff was not near Raul Rivera and Jennie Rivera when they were executing their ballots. Had the hearing officer considered that testimony,

to be abandoned." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008).

the plaintiff argues, he would not have found substantial evidence to support the violations with respect to Raul Rivera and Jennie Rivera. We are not persuaded.

The following facts, as found by the hearing officer and revealed by the record, are relevant as to whether the plaintiff violated § 9-140b (e) with respect to Raul Rivera and Jennie Rivera. Voters who completed their absentee ballots at the clerk's office regularly would do so at a conference table near the front desk in the office. The plaintiff brought four elderly Hispanic voters to the clerk's office because they had not received the absentee ballots that they previously had requested. She assisted three of the voters with their absentee ballot applications, including Raul Rivera, but no ballots were present while the plaintiff was helping the voters with their applications. When Raul Rivera received his absentee ballot, he asked the plaintiff for help, but she refused. After Raul Rivera insisted that the plaintiff help him, she briefly told him that there were lines for the different parties but reiterated that she could not help him fill out the ballot. She asked one of the other voters, "who seemed to have a better understanding of the process," to assist Raul Rivera.

When Barry entered the clerk's office to request an absentee ballot, he recognized the plaintiff, who was standing adjacent to the conference table where absentee voters completed their absentee ballots. While he was awaiting his absentee ballot, Barry saw four individuals, seated at the same table, who were completing orange sheets that appeared to be absentee ballots. At some point, the two individuals sitting across from him, one of whom was Raul Rivera, no longer had their ballots. The plaintiff remained standing next to the conference table while Barry waited for his absentee ballot application to be processed. Barry did not know where the plaintiff was when he received his absentee ballot

and did not believe that the plaintiff would have known that he was executing his absentee ballot at that time.

Jennie Rivera and Raul Rivera applied for absentee ballots at 1:24 p.m. and 1:25 p.m., respectively. They both returned their absentee ballots at 1:47 p.m. The ballot return receipts for Jennie Rivera and Raul Rivera bore the same serial number, and the receipt for Raul Rivera did not show that he provided any identification even though an absentee voter must show identification before the clerk's office will accept the absentee ballot. Additionally, Raul Rivera's voting record from the Democratic Registrar of Voters in Hartford indicated that he did not cast a vote in Hartford between 2003 and 2007. The records did not, however, reflect whether a voter had executed an absentee ballot that subsequently was not counted.

The hearing officer concluded that the plaintiff knew that the four individuals came to the clerk's office to apply for absentee ballots and that they all received absentee ballots while at the clerk's office. He found that the plaintiff was in the clerk's office on October 30, 2006, when Raul Rivera, Jennie Rivera, Jose Echevarria and Maria Echevarria received their absentee ballots for the November 7, 2006 election and was close enough to the individuals completing their ballots to know who seemed to have a better understanding of the process so that they could help Raul Rivera.

In reaching his decision, the hearing officer relied on the November 27, 2006 letter written by the plaintiff, the applications for absentee ballots, the absentee ballot receipts, and a letter written by Vasquez, as well as the testimony of Vasquez, Barry and the plaintiff. He did not credit the testimony of Maria Echevarria. The hearing officer also heard testimony from Carey, the city clerk, who testified that he saw the plaintiff assisting voters with the absentee ballot application but that he had

no personal knowledge of whether the plaintiff was present during the execution of absentee ballots, and Williams, an employee in the clerk's office, who processes the absentee ballot applications and who testified that the plaintiff was not near anyone executing an absentee ballot.

The court affirmed the decision of the hearing officer with respect to Raul Rivera and Jennie Rivera. It found that Barry's testimony and the November 27, 2006 letter from the plaintiff established that she was present when Raul Rivera and Jennie Rivera executed their absentee ballots.

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. [See] General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency. . . . It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before him, acted contrary to law and in abuse of his discretion. . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained. . . .

"It is not the function of an appellate court to insist that one particular type of evidence be presented before finding substantial evidence to be present. Indeed, we have stated previously that [t]here is no distinction between direct and circumstantial evidence [so] far as probative force is concerned . . . . In fact, circumstantial evidence may be more certain, satisfying and persuasive than direct evidence." (Citations omitted; internal quotation marks omitted.) *Goldstar Medical*

*Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 833–34, 955 A.2d 15 (2008).

Moreover, "[i]t is well established that it is the exclusive province of the trier of fact to make determinations of credibility, crediting some, all, or none of a given witness' testimony. . . . Additionally, [a]n administrative agency is not required to believe any witness, even an expert. . . . Nor is an agency required to use in any particular fashion any of the materials presented to it as long as the conduct of the hearing is fundamentally fair. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Citations omitted; internal quotation marks omitted.) Id., 830.

As the court correctly pointed out in its memorandum of decision, the hearing officer is entitled to credit, or not to credit, a witness' testimony. The hearing officer determined that the testimony of Maria Echevarria was not credible. He credited Vasquez' testimony that the records she consulted would not reflect whether an absentee ballot had been executed and subsequently not counted, and referenced the testimony of Carey, Williams and Winston Smith, another employee at the clerk's office, with respect to where absentee voters regularly completed their ballots in the office. The fact that the hearing officer did not credit all of their testimony was within his exclusive province.

Additionally, "[i]n reviewing an administrative determination, [although] we must take into account . . . contradictory evidence in the record . . . the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . [I]t is not the function of the trial court, nor of this court, to retry the cause. . . . [T]he determination of issues of fact are matters within [the] province [of the administrative agency]." (Internal quotation marks omitted.) *Altschul* v. *Salinas*, 53 Conn. App. 391, 397–98, 730 A.2d 1171, cert. denied, 249 Conn. 931, 761 A.2d 751 (1999). On the basis of our review of the record, including the testimony of Barry and the plaintiff as well as the November 27, 2006 letter from the plaintiff, there was substantial evidence to support the hearing officer's finding of a violation of § 9-140b (e) with respect to Raul Rivera and Jennie Rivera.

2

The plaintiff next claims that the hearing officer's decision was arbitrary and capricious because he ignored the defendant's alleged failure to provide exculpatory information pursuant to the *Brady* doctrine and made erroneous factual findings with regard to that failure.[7] Because we determine that the defendant is not required to provide exculpatory information, we find this argument to be without merit.

The following additional procedural history is necessary for our resolution of this claim. On January 24, 2008, the plaintiff requested a continuance of the hearing date because her counsel had filed an appearance the day before. In addition, the plaintiff's counsel stated that it "is crucial to our representation of our client that we review any statements made concerning the [defendant's] investigation, including witness statements. Please note on or about October 20, 2007 copies of the statements were requested from the [defendant's] counsel on behalf of [the plaintiff], and this request was denied. In addition, we have simultaneously requested

---

[7] *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

copies of the statements from the Chief State's Attorney's Office in Rocky Hill, which we understand assisted this [defendant] with its investigation." The same day, the hearing officer issued a consolidated pretrial discovery order that required the parties to make their pretrial disclosures of "all documents intended by either party to be offered into documentary evidence" by January 29, 2008.

The defendant responded on January 25, 2008, to the plaintiff's request for a continuance. It stated that it did not object to the continuance, but with respect to the plaintiff's discovery requests, the defendant's position "as to the October 20, 2007 request by Ramon Arroyo is that the [plaintiff] did not personally make the request and the request made by Ramon Arroyo was made under the Freedom of Information Act [General Statutes § 1-200 et seq.]; furthermore, the [defendant] is willing to fully comply with the [h]earing [o]fficer's [c]onsolidated [p]re-[t]rial [d]iscovery [o]rder . . . ." The defendant never produced statements from Raul Rivera, Jennie Rivera, Jose Echevarria or Maria Echevarria.

In his final decision, the hearing officer responded to the plaintiff's argument that the defendant had failed to provide exculpatory material. He stated: "In her posthearing brief, [the plaintiff] contended that the [defendant] failed to supply potentially exculpatory material to her by failing to provide a complete copy of its entire investigative file as requested by her husband, Raymond Arroyo, under the Freedom of Information Act by letter addressed to the [defendant] on October 30, 2007. . . . As the [plaintiff] acknowledges in her posthearing brief, the [defendant] qualifies as a law enforcement agency under the Freedom of Information Act, which means that its investigative files when that investigation could lead to potential criminal violation[s] are exempt from the Freedom of Information Act and were properly

denied to [the plaintiff] under the Freedom of Information Act. . . . Furthermore, [the plaintiff] had access to the other absentee ballot applicants referenced in this case and sent a private investigator to meet with those applicants. She presented testimony from one of them. [The plaintiff] suffered no harm because the [defendant's] investigators rightly refused the request from [the plaintiff's] agent to provide the investigative file." (Citations omitted.)

The court also addressed and rejected the plaintiff's argument regarding the defendant's duty to provide exculpatory evidence and the hearing officer's improper factual findings. It stated that the plaintiff had provided no authority to support her position that *Brady* applied to civil enforcement actions by the state or that the defendant was required to disclose its investigative file. It noted that the only evidence that the plaintiff identified as being withheld was a statement by Jose Echevarria and that the plaintiff actually was aware of the information that was contained in the alleged statement and had used it to her advantage. The court further noted that the plaintiff could have chosen to call Jose Echevarria to testify, but chose not to do so. Accordingly, it held that the hearing officer's finding was not erroneous.

"The law governing the state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established. The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United States constitution and the Connecticut constitution. . . . It is well established that [i]mpeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Floyd*, 253 Conn. 700, 736–37, 756 A.2d 799 (2000). "Even in the absence

of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *California* v. *Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984).

"Police are treated as an arm of the prosecution for *Brady* purposes, and the taint on the trial is no less if they, rather than the state's attorney, were guilty of the nondisclosure. . . . The State's duty of disclosure is imposed not only upon its prosecutor, but also on the State as a whole, including its investigative agencies. Therefore, if the [exculpatory materials] were held by the . . . police department we would be compelled to conclude that, constructively, the State's attorney had both access to and control over the documents." (Citations omitted; internal quotation marks omitted.) *Demers* v. *State*, 209 Conn. 143, 153, 547 A.2d 28 (1988).

Although the plaintiff asserts that *Brady* applies to administrative proceedings, and that as an investigative agency, the defendant had a duty to turn over any statements, she has provided no authority to support that assertion. Our case law amply demonstrates that *Brady* applies only to defendants in criminal prosecutions. See, e.g., *State* v. *Floyd*, supra, 253 Conn. 736 ("[t]he law governing the state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established"). Due process requires such an obligation to protect "the innocent from erroneous conviction and ensur[e] the integrity of our *criminal justice system.*" (Emphasis added.) *California* v. *Trombetta*, supra, 467 U.S. 485. This case is not a criminal action, but rather a civil enforcement action and, thus, the requirements of *Brady* do not apply. Because the defendant was not required to provide the plaintiff with exculpatory evidence, we conclude that the plaintiff's argument that the hearing officer ignored the defendant's failure to

do so and made erroneous factual findings with regard to that failure is without merit.

## C

The plaintiff next claims that the court erred in finding that the hearing officer properly excluded written statements by Jennie Rivera and Jose Echevarria. She argues that the hearing officer's decision not to allow the statements was improper because hearsay evidence is permitted in administrative hearings and because the hearing officer's refusal to admit the statements was prejudicial to the plaintiff. We do not agree.

Additional procedural history is necessary to resolve this claim. At the hearing on July 17, 2009, the plaintiff called Thomas J. McCullough, a private investigator who was hired by the plaintiff to interview and take statements from Raul Rivera, Jennie Rivera, Jose Echevarria and Maria Echevarria. With respect to Jennie Rivera, McCullough testified that he took a statement from her, that she signed it in his presence, that McCullough kept a copy of the statement in his normal course of business, that the written statement was made contemporaneously with Jennie Rivera's interview, and that McCullough had both a handwritten and typed version of the statement at the hearing that day. When the plaintiff's counsel attempted to offer Jennie Rivera's statement into the record, the defendant objected, and the hearing officer asked for the basis for the admission of the statement. The plaintiff's counsel responded that Jennie Rivera was in Florida. He asserted that Jennie Rivera had been interviewed by the defendant and had provided it with a statement. The plaintiff's counsel then conceded that the statement taken by McCullough was being offered for the truth of its contents, namely, to verify what Jennie Rivera had told McCullough.

The defendant again objected, arguing that Jennie Rivera's statement was hearsay and that her being in

Florida had no bearing on whether the statement should be admitted. The plaintiff's counsel replied that hearsay could be admitted and that the defendant could not claim that it did not know what Jennie Rivera might say because it had spoken to her. After rejecting the plaintiff's counsel's argument that the statement Jennie Rivera had given to the defendant was the same one that she gave to McCullough and noting that Jennie Rivera was not available for cross-examination, the hearing officer sustained the defendant's objection.

The plaintiff's counsel resumed his questioning of McCullough, and asked him about whether McCullough had spoken to Jennie Rivera and whether she had confirmed that she had given a statement to the defendant. The defendant again objected on the ground of hearsay, and the hearing officer again sustained the objection. The plaintiff's attorney asserted that he was not offering McCullough's testimony for its truth, but rather to demonstrate that the defendant had taken a statement from Jennie Rivera. The hearing officer stated that the plaintiff's argument "may be a distinction without a difference" because neither Jennie Rivera's statement to the plaintiff's investigator nor to the defendant's investigator was subject to cross-examination. He continued, stating: "I'm not going to let you question [McCullough] about the contents of—or the substance of the interview for a witness who's not available for cross-examination." The plaintiff's counsel raised the business record exception to the rule against hearsay, and the hearing officer rejected it, stating that that exception did not overcome all hearsay objections, only objections related to the issue of authenticity. The plaintiff's counsel responded that hearsay evidence was admissible as long as the person is available for cross-examination and argued that Jennie Rivera was available to the defendant because it put her on its witness list. He further argued that this type of statement is normally

allowed unless one side claims prejudice or surprise and that the defendant had not done so. The hearing officer did not change his ruling.

The plaintiff's counsel next attempted to admit Jose Echevarria's statement taken by McCullough. The defendant again objected, and the hearing officer sustained the objection. The hearing officer stated that "this document was prepared in anticipation of this litigation, not [within McCullough's] ordinary course of business to conduct [an] investigation." The plaintiff's counsel responded that the statement was taken in anticipation that the state would call the witnesses on its witness list. The hearing officer stated that the witnesses were available on July 9, 2009, and that if the plaintiff had a concern at the end of the defendant's case that the witnesses not called would be unavailable for a subsequent hearing, she could have asked that their testimony be taken at the July 9 hearing.

Maria Echevarria testified next. She testified that both she and her husband, Jose Echevarria, were available to testify on July 9, 2009, and that Jose Echevarria was not available on July 17, 2009, because he was ill. Maria Echevarria further testified that she and Jose Echevarria had spoken to a representative from the defendant's office regarding her absentee voting on October 30, 2006, but that she did not give or sign a written statement.

The plaintiff recalled McCullough and attempted to reintroduce Jose Echevarria's statement. The plaintiff's attorney argued that Jose Echevarria was under subpoena, was interviewed by the defendant, was not available that day because he was ill and that his statement would corroborate Maria Echevarria's testimony. The defendant renewed its objection. The hearing officer sustained the objection, stating that "I don't think that that entitles you to admission of his statement. It may

entitle you to—being as that's significant—to a continu-
ance so that . . . his testimony can be secured. And
if you need to enforce your subpoena, there are reme-
dies that you can pursue to do that. But that doesn't
entitle you to . . . the admission of the statement. . . .
I'll leave it to you to determine whether or not you will
seek a continuance to enforce your subpoena so that
you can secure Mr. Echevarria's live testimony, because
he apparently was here on a prior date and presumably
would be able to be here at a future date, if you so
choose." The plaintiff did not seek a continuance.

On appeal to the Superior Court, the plaintiff argued
that the hearing officer's decision to exclude the state-
ments of Jennie Rivera and Jose Echevarria was arbi-
trary and capricious. The court disagreed, holding that
"[a]lthough the hearing officer perhaps could have
admitted these statements, it was not an abuse of discre-
tion to exclude them." It found that the statements
taken by the plaintiff's investigator were double hearsay
and that, unlike the situation with the admission of
the plaintiff's statement, neither Jennie Rivera nor Jose
Echevarria were available to be cross-examined. The
court concluded that "the plaintiff has not briefed the
issue of prejudice or harm. Thus, it is impossible to say
how the substantial rights of the person appealing have
been prejudiced . . . by the exclusion of the state-
ments." (Citation omitted; internal quotation marks
omitted.)

"[A]dministrative tribunals are not strictly bound by
the rules of evidence and . . . they may consider evi-
dence which would normally be incompetent in a judi-
cial proceeding, as long as the evidence is reliable and
probative. . . . There is moreover no specific prohibi-
tion against hearsay evidence in the Uniform Adminis-
trative Procedure Act, which provides that [a]ny oral
or documentary evidence may be received, but [that]
the agency shall, as a matter of policy, provide for the

exclusion of irrelevant, immaterial or unduly repetitious evidence. General Statutes § 4-178 (1).

"In order to reverse an agency decision on the basis of an erroneous evidentiary ruling, it is necessary that the appellant demonstrate that substantial rights of [his] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record." (Citations omitted; internal quotation marks omitted.) *Tomlin* v. *Personnel Appeal Board*, 177 Conn. 344, 348, 416 A.2d 1205 (1979).

The plaintiff is correct that the UAPA does not prohibit the hearing officer from admitting hearsay statements. The UAPA does not, however, require the hearing officer to admit such statements. The court found that the statements taken by McCullough were double hearsay, thus reducing their reliability, and that unlike the situation with the plaintiff, Jennie Rivera and Jose Echevarria were not available for cross-examination. Moreover, the court found that the plaintiff had not briefed the issue of prejudice or harm.

On appeal to this court, the plaintiff has failed to explain how she was prejudiced by the hearing officer's decision to exclude the statements, nor has she demonstrated that the hearing officer's decision was clearly erroneous. Accordingly, we conclude that the trial court did not err in deciding that the hearing officer properly excluded the statements of Jennie Rivera and Jose Echevarria.[8]

---

[8] The plaintiff also appears to claim that the hearing officer improperly determined that the statements of Jennie Rivera and Jose Echevarria were not admissible under the business record exception to the hearsay rule. This argument is unavailing. Section 8-4 (b) of the Connecticut Code of Evidence provides in relevant part: "The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. . . ." (Internal quotation marks omitted.)

## D

The plaintiff's final claim is that she was substantially prejudiced by the delay in prosecution. Although she agrees with the court that the remedy for the defendant's delay was to file a motion to show cause pursuant to General Statutes § 9-7a (g), the plaintiff nevertheless maintains that she was prejudiced by the delay because Raul Rivera, Jennie Rivera and Jose Echevarria[9] were not available to testify during the hearing, and the hearing officer improperly denied the admission of Jennie Rivera's and Jose Echevarria's statements taken by

---

This subsection establishes that a party may invoke the business record exception when the person who made the writing is not the person who is testifying about the writing. In the present case, McCullough testified that he was the person who took the statements. Thus, this exception does not apply.

Additionally, we note that even if the statements were deemed business records of McCullough, they contained another layer of hearsay. "Once [the criteria] have been met by the party seeking to introduce the record . . . it does not necessarily follow that the record itself is generally admissible, nor does it mean that everything in it is required to be admitted into evidence. . . . [T]he information contained in the [business record] must be based on the entrant's own observation or on information of others whose business duty it is to transmit it to the entrant. . . . If the information does not have such a basis, it adds another level of hearsay to the report which necessitates a separate exception to the hearsay rule in order to justify its admission. . . . Hearsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception." (Citation omitted; internal quotation marks omitted.) *State* v. *Torelli*, 103 Conn. App. 646, 659-60, 931 A.2d 337 (2007). Because McCullough did not have personal knowledge of the events about which Jennie Rivera and Jose Echevarria reported, their statements constituted hearsay.

[9] The plaintiff notes in her brief to this court that Raul Rivera became incompetent during the pendency of this matter and cites a portion of the oral argument from her appeal to the trial court where the plaintiff's counsel was asserting that Raul Rivera had become incompetent between the two hearing dates. Reading that statement in context with the argument that was made during oral argument to the trial court, however, reveals that the plaintiff's counsel misspoke; he meant to refer to Jose Echevarria. This reading is consistent with the transcript of the hearing that indicated that Raul Rivera did not attend either day of the hearing and that Jose Echevarria attended the first day of the hearing.

McCullough. Because the plaintiff did not properly preserve this argument, we decline to review the claim.[10]

The following procedural history is relevant to this claim. The plaintiff learned that a complaint had been lodged against her when she spoke to William Smith, an attorney for the defendant. She subsequently received written confirmation by letter dated November 15, 2006, from Crayton. On October 10, 2007, the defendant found that there was reason to believe that the plaintiff had violated § 9-140b (d) and (e). The hearing was initially scheduled to occur on January 30, 2008. The plaintiff, however, sought a continuance, as she had recently retained counsel. The plaintiff subsequently requested two more continuances, once on March 20, 2008, because she had filed a motion to show cause pursuant to § 9-7a (g) in the Superior Court, and again on January 27, 2009, because the legislature would have been in session when the hearing was scheduled. On June 8, 2009, the defendant asked for a one month continuance that was granted. The hearing took place on July 9 and 18, 2009.

Raul Rivera, Jennie Rivera, Jose Echevarria and Maria Echevarria were listed as potential witnesses on each of the defendant's lists of potential witnesses that was given to the plaintiff; they were not listed as potential witnesses for the plaintiff. Neither Raul Rivera nor Jennie Rivera was present at either day of the hearing, nor did either party attempt to secure their presence for the hearing. Both Jose Echevarria and Maria Echevarria were present on July 9, 2009, but neither one of them testified. Only Maria Echevarria returned on July 17, 2009, and she testified on that day.

---

[10] To the extent that the plaintiff is making a constitutional argument, we note that she has not requested review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine pursuant to Practice Book § 60-5.

On appeal to the Superior Court, the plaintiff argued that § 9-7a (g) was unconstitutional because it imposed no penalty when the defendant failed to complete its investigation of complaints within sixty days.[11] She maintained that the plaintiff could not be provided a fair hearing if the defendant were allowed to go forward with a contested hearing after an extensive delay because she had been prejudiced by the delay caused by the time the defendant took to investigate the complaint. Embedded within a separate section of her brief that pertained to whether the hearing officer was biased because he had prejudged her case, the plaintiff asserted that if the defendant had been less dilatory, Raul Rivera might have been able to testify at the hearing.

The trial court rejected the plaintiff's argument regarding the constitutionality of § 9-7a (g), stating that § 9-7a (g) "does not create an absolute deadline of sixty days for investigation. Rather, it gives the person being investigated an additional remedy if the investigation takes longer. The plaintiff here invoked that remedy

[11] General Statutes § 9-7a (g) provides in relevant part: "In the case of a written complaint filed with the commission pursuant to section 9-7b on or after January 1, 1988, if the commission does not, by the sixtieth day following receipt of the complaint, either issue a decision or render its determination that probable cause or no probable cause exists for one or more violations of state election laws, the complainant or respondent may apply to the superior court for the judicial district of Hartford for an order to show cause why the commission has not acted upon the complaint and to provide evidence that the commission has unreasonably delayed action. Such proceeding shall be privileged with respect to assignment for trial. The commission shall appear and give appropriate explanation in the matter. The court may, in its discretion, order the commission to: (1) Continue to proceed pursuant to section 9-7b, (2) act by a date certain, or (3) refer the complaint to the Chief State's Attorney. . . . Nothing in this subsection shall preclude the commission from continuing its investigation or taking any action permitted by section 9-7b, unless otherwise ordered by the court. The commission or any other party may, within seven days after a decision by the court under this subsection, file an appeal of the decision with the Appellate Court."

and filed suit in the Superior Court. . . . The plaintiff therefore has no cause to complain." (Citation omitted.) In a footnote to the section of the memorandum of decision in which the court addressed whether the hearing officer had properly excluded the statements of Jennie Rivera and Jose Echevarria, the court noted: "The plaintiff complained at oral argument that, by the time the commission reached her case, her witnesses were unavailable. The plaintiff has not briefed this point, and thus the court considers it abandoned. See *Merchant* v. *State Ethics Commission,* 53 Conn. App. 808, 818, 733 A.2d 287 (1999). There is, in any case, no indication that the plaintiff made any efforts to preserve her witnesses' testimony. Further, as noted, the plaintiff requested three continuances of the hearing date and thus bears some responsibility for the delay."

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *State* v. *Colon,* 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004). "A claim briefly suggested is not distinctly raised. . . . [A party's] failure to raise distinctly in the trial court the grounds upon which he now relies effectively deprived the trial court of the opportunity to consider the matter in the first instance." (Citation omitted; internal quotation marks omitted.) *State* v. *Stewart,* 77 Conn. App. 238, 245, 822 A.2d 366 (2003).

In the present case, the argument on which the plaintiff now relies was not raised distinctly before the trial court, was not considered by the trial court, and the plaintiff did not move for a reconsideration of that portion of the decision. Although she arguably did raise

the issue of substantial prejudice due to the delay in prosecution in her brief to the trial court, it was embedded in a section that was not at all related to the argument, not supported by any analysis or authority and was not referred to in the section regarding the constitutionality of § 9-7a (g). Thus, we cannot conclude that her argument now was "so stated as to bring to the attention of the court the precise matter on which its decision [was] being asked." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Colon,* supra, 82 Conn. App. 659. Accordingly, we decline to review this claim, as it is unpreserved.[12]

## II

### DEFENDANT'S CROSS APPEAL

The defendant claims that the trial court erred in reversing the violations of § 9-140b (e) with respect to

[12] Even if we were to consider the plaintiff's claim on the merits, we would have determined that she was not substantially prejudiced by the delay in prosecution. First, as was correctly noted by the trial court and conceded by the plaintiff in her brief to this court, § 9-7a (g) provides a remedy for a delay in the investigation of the complaint of which the plaintiff took advantage. That remedy includes an order of the court stopping the investigation. See General Statutes § 9-7a (g) ("[n]othing in this subsection shall preclude the commission from continuing its investigation or taking any action permitted by section 9-7b, *unless otherwise ordered by the court*" [emphasis added]). Moreover, after the plaintiff's motion to show cause was dismissed, she had seven days to appeal the decision to this court and failed to do so. Second, the plaintiff is partially responsible for the delay in prosecution. The hearing was originally scheduled to take place on January 30, 2008. The plaintiff, however, asked for three continuances, such that the hearing would have taken place on June 8, 2009. Although the defendant did ask for the final continuance, that one month continuance was significantly shorter than the cumulative sixteen month continuance that the plaintiff sought and was granted. Finally, the plaintiff cannot prevail on her argument that she was prejudiced because three witnesses were unavailable. At the hearing, the plaintiff's counsel conceded that he had not subpoenaed Raul Rivera and did not take steps to secure his testimony after the hearing on July 9, 2009, and that he did subpoena Jennie Rivera but did not take any steps to secure her testimony when she did not appear on July 9. 2009. Moreover, the plaintiff failed to request a continuance so that she could enforce her subpoena of Jose Echevarria after the hearing officer invited her to do so. Although Raul Rivera, Jennie Rivera and Jose Echevarria were

Jose Echevarria and Maria Echevarria because there was substantial evidence to support the hearing officer's conclusion that the plaintiff committed those violations. We agree.

As we previously noted, "[a]n administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained." (Citation omitted; internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 833–34. "Our task is to review the court's decision to determine whether it comports with the [UAPA], and whether the court reviewing the administrative agency acted unreasonably, illegally, or in abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Lawendy* v. *Connecticut Board of Veterinary Medicine*, supra, 109 Conn. App. 118.

In addition to the facts that were recited in part II A of this opinion, the following facts are necessary to resolve this claim. The hearing officer found that in addition to assisting Raul Rivera, the plaintiff also assisted Jose Echevarria and Maria Echevarria with their absentee ballot applications. Jose Echevarria and Maria Echevarria both submitted their absentee ballot applications at 1:45 p.m., and returned their absentee ballots at 1:57 p.m. and 2:01 p.m., respectively.

William Smith, an attorney for the defendant, also testified. Prior to the plaintiff receiving written notice of the Barry complaint, the plaintiff had a telephone conversation with William Smith. During the telephone call, the plaintiff expressed the belief that a complaint

not present at the hearing, the plaintiff has not demonstrated that they were unavailable or that she was unable to secure their testimony by other means.

was going to be filed that alleged that she had assisted people at the clerk's office with absentee ballots. After William Smith confirmed that a complaint had been filed, the plaintiff explained that the individuals were Spanish speaking and that she had helped them understand the ballot but that she did not direct them on how to vote.

The trial court reversed the violations of § 9-140b (e) with respect to Jose Echevarria and Maria Echevarria. Although the court concluded that the hearing officer reasonably could have found the "knowingly" part of the violation as to all four individuals on the basis of the plaintiff's November 27, 2006 letter in which she stated that she had brought four elderly Hispanic voters to the clerk's office because they had not received the absentee ballots they had requested, the court rejected the hearing officer's conclusion that the plaintiff was actually present when all four voters executed their absentee ballots.

The court questioned the hearing officer's factual findings that were based on Barry's testimony and the plaintiff's November 27, 2006 letter. It disagreed that Barry had testified that four individuals were completing absentee ballots while he was awaiting his absentee ballot. The court stated: "A review of the actual testimony reveals that Barry only saw two persons—Raul Rivera and a female—with ballots while the plaintiff was near the table. Barry did not see what the other two people were doing at the time."

The court also rejected the hearing officer's reliance on the November 27, 2006 letter to support his conclusion that the plaintiff was present when Jose Echevarria and Maria Echevarria executed their absentee ballots. It stated: "[T]he letter firmly supports the conclusion that the plaintiff saw two people—[Raul] Rivera and one other—receive absentee ballots. This aspect of the

letter also corroborates Barry's testimony and the [defendant's] finding of two violations of the absentee ballot laws.

"There is, however, nothing in the letter to support the [defendant's] statement that the plaintiff was present while the other two people executed—or even received—absentee ballots. It is perhaps arguable that, if the plaintiff was present while two of the four filled out absentee ballots, as Barry's testimony establishes, then it is a fair inference that she saw the other two do so. However, the [defendant's] findings reveal that Raul Rivera and Jenny Rivera—who presumably was the female whom Barry saw along with Raul Rivera—returned their absentee ballots to the clerk at 1:47 p.m., while Jose Echevarria returned his ballot at 1:57 p.m. and Maria Echevarria returned her ballot at 2:01 p.m. . . . Given this evidence, it is equally likely that the Echevarrias had not completed or even begun to fill out their absentee ballots during the time that the Riveras were executing their ballots. In view of the process whereby a voter must first make an application in order to receive an absentee ballot . . . it would be speculation to conclude that the Echevarrias were filling out the actual ballot, rather than the application, at the time when Barry observed the plaintiff and the Riveras with their ballots. Such speculation does not amount to 'substantial evidence' that the plaintiff was present while four persons filled out absentee ballots." (Citations omitted; footnotes omitted.)

We again note that "[w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken

as a whole." (Internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, supra, 135 Conn. App. 812.

Applying our highly deferential standard of review, we determine that the hearing officer's conclusion that the plaintiff was present when Jose Echevarria and Maria Echevarria were executing their absentee ballots was supported by substantial evidence. Although to come to its conclusion the court focused on Barry's testimony and the plaintiff's November 27, 2006 letter, both of which admittedly focused on Raul Rivera, other evidence supported the hearing officer's conclusion. Specifically, William Smith testified that the plaintiff informed him that she helped the individuals to understand the ballots because they were Spanish speaking but did not direct them on how to vote.

Moreover, the court's own statement regarding the likelihood of the plaintiff's having been present while Jose Echevarria and Maria Echevarria executed their absentee ballots is consistent with our conclusion that there was substantial evidence to support the hearing officer's finding. Specifically, the court stated: "It is perhaps arguable that, if the plaintiff was present while two of the four filled out absentee ballots, as Barry's testimony establishes, then it is a fair inference that she saw the other two do so. However, the [defendant's] findings reveal that Raul Rivera and Jenny Rivera—who presumably was the female whom Barry saw along with Raul Rivera—returned their absentee ballots to the clerk at 1:47 p.m., while Jose Echevarria returned his ballot at 1:57 p.m. and Maria Echevarria returned her ballot at 2:01 p.m. . . . *Given this evidence, it is equally likely* that the Echevarrias had not completed or even begun to fill out their absentee ballots during the time that the Riveras were executing their ballots." (Citation omitted; emphasis added.)

"[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . Moreover, it is not the function of the trial court, nor of this court, to retry the cause. . . . [T]he determination of issues of fact are matters within [the] province [of the administrative agency]." (Internal quotation marks omitted.) *Altschul* v. *Salinas*, supra, 53 Conn. App. 397–98. Because, on the basis of the evidence considered by the court, the court determined that it was as likely that the plaintiff was present when Jose Echevarria and Maria Echevarria were executing their ballots as it was unlikely, the court improperly substituted its judgment for that of the hearing officer and improperly reversed the violations with respect to Jose Echevarria and Maria Echevarria.

On the plaintiff's appeal, the judgment is affirmed. On the defendant's cross appeal, the judgment is reversed and the case is remanded with direction to reinstate the decision of the defendant and to render judgment accordingly.

In this opinion the other judges concurred.