******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STANLEY WILLIAMS *v.* COMMISSIONER
OF CORRECTION
(AC 46531)

Bright, C. J., and Alvord and Clark, Js.

*Syllabus*

The petitioner appealed to this court from the judgment of the habeas court
denying his amended petition for a writ of habeas corpus, claiming that
the court erred by declining to issue a capias for a witness at his habeas
trial. The petitioner, who had previously been convicted, following a
jury trial, of various crimes, claimed at his habeas trial that his criminal
trial counsel, K, had rendered ineffective assistance by, inter alia, failing
to call J, his former girlfriend, as a witness at his criminal trial. The
petitioner subpoenaed J for both days of his habeas trial, but she did
not appear on either day. On the second day of the habeas trial, the
court denied the petitioner's request to issue a capias for J, finding that,
although the petitioner had met the requirements for a capias for the
first day of the habeas trial, he had not proved that J had actually
received the subpoena for the second day, nor had he proved that J
lacked a reasonable excuse for appearing in court. *Held* that the habeas
court did not abuse its discretion in declining the petitioner's request
for a capias; the court's denial was not unreasonable or arbitrary and
it did not base its decision on improper or irrelevant factors, as it made
a thorough inquiry of the petitioner's counsel to ascertain whether the
statutory (§ 52-143 (e)) factors for issuing a capias had been met, and
counsel was unable to provide the court with any information as to
whether J had received the subpoena or whether she had a legitimate
reason for her failure to appear.

Argued May 29—officially released July 9, 2024

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district
of Tolland and tried to the court, *Bhatt, J.*; judgment
denying the petition, from which the petitioner, on the
granting of certification, appealed to this court.
*Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appel-
lant (petitioner).

*Brett R. Aiello*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Kelly Masi*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

CLARK, J. Following the granting of his petition for certification to appeal, the petitioner, Stanley Williams, appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erred by declining to issue a capias for his former girlfriend, whom he had sought to call as a witness at his habeas trial. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. In July 2010, the petitioner was tried on two counts each of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), in connection with the robberies of a liquor store and outlet store in Waterbury. At trial, the petitioner was represented by Attorney Jeffrey Kestenband. His theory of defense was misidentification.

Marlyn DeJesus, an employee of the outlet store, testified at the petitioner's criminal trial. DeJesus testified that she was working in the outlet store during the robbery and that the robber had forced her at knifepoint to open the cash register. She described the robber to the police in a written statement, identified the petitioner from a photographic array, and identified him again in the courtroom at trial. During her testimony, she added that the robber had worn glasses, a detail that had not appeared in her written statement to the police. On cross-examination, Kestenband challenged

her description of the robber by pointing out this discrepancy.[1]

Following DeJesus's testimony and Kestenband's cross-examination, the state—over the petitioner's objection—called as a witness James Smyth, an optometrist. Smyth testified that he or one of his associates had examined the petitioner's eyes approximately five times between 2004 and 2009, and that he had prescribed the petitioner bifocals to wear at all times.

On July 26, 2010, the jury convicted the petitioner of all charges and found him guilty of being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a). The court, *Crawford, J.*, sentenced him to twenty-five years of incarceration. This court and our Supreme Court affirmed the judgments of conviction. See *State* v. *Williams*, 146 Conn. App. 114, 117, 75 A.3d 668 (2013), aff'd, 317 Conn. 691, 119 A.3d 1194 (2015).

The petitioner filed a petition for a writ of habeas corpus on September 3, 2015, and filed the operative second amended petition on December 9, 2022. The habeas court, *Bhatt, J.*, held a trial on the petition on March 1 and 20, 2023. As relevant to this appeal, the petitioner claimed that Kestenband had rendered ineffective assistance by failing to call Cheryl Jackson, his former girlfriend, and Detective David McKnight of the Waterbury Police Department as witnesses at his criminal trial. During the habeas trial, the petitioner presented testimony from McKnight and Kestenband and testified on his own behalf.[2]

---

[1] Surveillance video of both robberies depicted the perpetrator wearing glasses. The petitioner was not wearing glasses in the photographic array from which DeJesus identified him. The record indicates that the petitioner was not wearing glasses in court during his criminal trial.

[2] The petitioner also presented testimony from Attorney Lisa Vanderhoof, who had represented him in his direct appeal, in connection with a separate claim of ineffective assistance of appellate counsel, which is not at issue in this appeal.

In a 2009 affidavit seeking an arrest warrant for the petitioner, McKnight stated that, shortly after the robberies of the liquor and outlet stores, Jackson had gone to the Waterbury Police Department to follow up on a past domestic violence case involving the petitioner. McKnight wrote that, while at the police department, Jackson was shown a surveillance photograph of the liquor store robbery and—upon seeing the robber—identified him as the petitioner.[3] However, at the habeas trial, Kestenband testified that his own investigator, David Wallace, had obtained a signed statement from Jackson in which she denied identifying the petitioner to the police and stated that she had never known the petitioner to wear glasses.[4]

Kestenband testified that he had initially considered calling Jackson as a witness at the petitioner's criminal trial but that he decided against doing so once the state introduced evidence that the petitioner wore glasses. He explained that, at that point, "the value of . . . Jackson's favorable anticipated testimony that [the petitioner] did not wear eyeglasses went by the wayside essentially. Because there was documentary proof that [the petitioner] had [an] eyeglass prescription. And so, I didn't think that that was a battle I could win in trying to show that he didn't wear eyeglasses by having . . . Jackson come in as a defense witness to say that he didn't wear eyeglasses to her knowledge."

Kestenband added that, "[i]f I had called [Jackson] as a witness, the state would have been able to call [McKnight] to come in and impeach her testimony . . . given how jurors will typically balance credibility,

---

[3] The robberies for which the petitioner was convicted occurred on May 12 and 14, 2009. McKnight's affidavit stated that Jackson identified the petitioner at the Waterbury Police Department on May 20, 2009.

[4] Jackson's written statement to Wallace was marked for identification but was not admitted into evidence at the habeas trial. McKnight's affidavit was admitted as a full exhibit.

although they're instructed that a police officer is not to be deemed more credible than any other witness, in a situation like that where she could be construed as being aligned with [the petitioner] given their relationship . . . I'm sure it was my decision to say that I didn't want to have her come in and testify . . . ." He explained that Smyth's testimony regarding the petitioner's eyeglasses "potentially undermined . . . Jackson's credibility in the face of medical documentary evidence that he did wear glasses. So that would have factored into my analysis as to why not to call her on whether she identified him in the video as well."

With respect to McKnight, Kestenband testified that, "if, in fact, his testimony would have been that . . . Jackson identified [the petitioner] as the robber, he certainly would not have been helpful in that sense. And if he had testified that . . . Jackson said that she didn't recognize [the petitioner], that—I guess my understanding, and I, you know, again, I don't have an independent recollection of this, is that his statement was that she did identify him."

The petitioner subpoenaed Jackson for both days of the habeas trial, but she did not appear on either day. Both subpoenas were served via abode service. Shortly before proceedings adjourned on the first day of the habeas trial, the court asked the petitioner's counsel, Alissa Doiron, if she had any more witnesses. Doiron stated that she had subpoenaed Jackson to appear that day, but that Jackson informed her "strongly" that she would not be appearing. The court responded, "Okay. That's just a statement for the record?" Doiron replied, "Yes, Your Honor." Following a brief discussion in which the court settled on March 20, 2023, as the next trial date, Doiron stated, "I'm going to subpoena [Jackson] again. And—and see if she appears on the twentieth as well."

At the start of proceedings on March 20, Doiron requested that the court issue a capias for Jackson. Doiron stated, "[Jackson's] been subpoenaed twice now. I don't believe that she would voluntarily appear based on my prior communications with her. We need her testimony to support the claim that her testimony was necessary in the prior—in her—in [the petitioner's] prior criminal trial. We—there is a statement that she wrote and a statement that the detective wrote. They conflict [with] each other and we need her testimony to give some clarity to that." After a brief colloquy in which it sought to clarify what Jackson's testimony would add, the court stated, "Okay. Before I can even consider issuing a capias, I mean, there are several requirements that need to be met and this is your opportunity to meet those requirements for the issuance of a capias."

The court then sought to determine whether the requirements for a capias set forth in General Statutes § 52-143 (e)[5] and in *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 239, 145 A.3d 362 (2016), cert. denied, 324 Conn. 905, 153 A.3d 653 (2017), had been satisfied. Under § 52-143 (e), in order for the court to issue a capias for a subpoenaed witness, the witness must lack a "reasonable excuse" for her failure to

---

[5] General Statutes § 52-143 (e) provides: "If any person summoned by the state, or by the Attorney General or an assistant attorney general, or by any public defender or assistant public defender acting in his official capacity, by a subpoena containing the statement as provided in subsection (d) of this section, or if any other person upon whom a subpoena is served to appear and testify in a cause pending before any court and to whom one day's attendance and fees for traveling to court have been tendered, fails to appear and testify, without reasonable excuse, he shall be fined not more than twenty-five dollars and pay all damages to the party aggrieved; and the court or judge, on proof of the service of a subpoena containing the statement as provided in subsection (d) of this section, or on proof of the service of a subpoena and the tender of such fees, may issue a capias directed to some proper officer to arrest the witness and bring him before the court to testify."

appear, and the party seeking a capias must prove that the person whom they have summoned was properly served with the subpoena. In *Moye*, this court clarified that proof of abode service is sufficient to warrant the issuance of a capias under § 52-143 (e), but only if the party requesting the capias can show that the absentee witness received the subpoena and knows of its contents. *Moye* v. *Commissioner of Correction*, supra, 239. The following colloquy ensued:

"The Court: Well, but—so, it's abode service. So, you know, your requirement is to show that she's aware of the contents of the subpoena. Received it and is aware of the contents of the subpoena. How do we know that?

"[The Petitioner's Counsel]: After she was served the first time for the March first trial date, she called me at the office, and I returned her call . . . [a]nd she explained to me that she remembered meeting with the detective. She remembered meeting with the investigator, and she has no additional information to report. She feels that her testimony wouldn't be helpful, even though I expressed to her what I was looking for and why I felt that it was necessary. And she advised that she was not going to appear. That she had no plans to appear and that she would—she would deal with whatever penalties came her way.

"The Court: What about for today?

"[The Petitioner's Counsel]: I tried to call her, and I was unable to get in contact with her. I was also unable to leave a message because of whatever type of phone service she has.

"The Court: So, I mean, I think that's part of the— that does pose a little bit of a different problem because, you know, you may have satisfied the requirements of the capias for March first. But—I mean, you have to show me that she received the subpoena and knows of

the contents of this subpoena in order to appear today. I don't know that I can issue a capias based on a previous court date.

"[The Petitioner's Counsel]: If I may, Your Honor? I will add, you know, the subpoena is identical except for the date. So, she—

"The Court: I know. I know, but I know that she received the first one.

"[The Petitioner's Counsel]: Okay.

"The Court: Because she talked to you after the first one.

"[The Petitioner's Counsel]: Mhm.

"The Court: I just—I don't know that she got the second one. How do I know that she got the second one? I mean, a capias is a pretty significant thing. You're asking me to have her arrested and brought to court.

"[The Petitioner's Counsel]: Right.

"The Court: And that's why I think our law requires knowing receipt of that subpoena. There could be a legitimate reason why she's not responding. I don't know, maybe she's out of town. Maybe she's—

"[The Petitioner's Counsel]: Right.

"The Court: —in the hospital. It could be any number of reasons. I think that's part of the issue with—that's why even abode service is fine, as long as you can show that the witness received it and knows of the contents of it. I'm assuming that she would know of the contents of the subpoena, what you're asking her to show up to do, but I don't know that you can show that she received it.

"Now obviously, if she's nonresponsive, I understand that's a problem for you in being able to show that she

received the subpoena. But I don't know that without some information that she—because there could be—as I said, you know. I also would have to find that—part of the court's discretion in issuing a capias is the determination of the witness'—is knowingly flaunting a legitimate court order to appear.

"So, maybe she can't get here? Or maybe her car's not working. Maybe she's out of town. Maybe she's sick. Those would—those would be legitimate reasons for not appearing. Right? And I wouldn't issue a capias, if that was the case. So, those are my thoughts."

The court then denied the petitioner's request for a capias. It stated that its "primary reason" for doing so was that it was "not convinced that the requirements for the issu[ance] of a capias have been met." The court explained, "I just don't have any evidence that [Jackson's] actually received the subpoena. I can infer that, but I don't think that's an appropriate basis to issue a capias. So, I just don't think that the requirements have been met. And again, it—the case law is pretty clear, and the statute is pretty clear. [Section] 52-143 (e) says if any person upon whom a subpoena is served to appear—fails to appear without reasonable excuse—again, I don't know if there is a reasonable excuse. Again, you're hampered, I understand that, because of the fact that she's not responded to you."

Citing *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 239, the court further stated that "abode service of the subpoena authorizes the court to issue [a] capias only if the party requesting the capias establishes that the absentee witness is in receipt of the subpoena and knows of the contents of the subpoena. Again, I understand that it poses a difficulty for you if she's not responding. But I don't have any evidence that she received it. I can assume that she knows about it if she received it, but I don't know that she received it. And

I also don't know that she has no reasonable excuse." The court noted that, "although I don't think it would have prevented me from issuing the capias, I do think the substance of [Jackson's] testimony—what it would have been is already before me to consider, but I do understand that she would be a witness that you would need to call in support of your claims."

On March 28, 2023, the habeas court denied the petitioner's petition for a writ of habeas corpus. In its memorandum of decision, the court found, inter alia, that Kestenband's decisions not to call Jackson and McKnight were reasonable tactical decisions that did not constitute deficient performance and that the petitioner had failed to prove that those decisions prejudiced him. In a footnote, the court stated, "[The petitioner] subpoenaed Jackson; however, she did not appear on either day of trial. [The petitioner] sought the issuance of a capias to secure her attendance, however the court denied that request because [the petitioner] could not show that Jackson had received a subpoena for the second day of trial, since Jackson did not respond to counsel's attempts at contact. [The petitioner] could also not show that Jackson had no 'reasonable excuse' for not appearing." This appeal followed.

I

On appeal, the petitioner challenges the habeas court's denial of his capias request. Before we reach the merits of his claim, we begin with the standard of review. A capias is an "extraordinary measure" to compel attendance at a judicial proceeding and involves the arrest of the witness in question. (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 222 Conn. App. 855, 862 n.5, 307 A.3d 923 (2023). "In light of the gravity of such action, Connecticut law is clear that the issuance of a capias is not mandatory but, rather, rests in the

sole discretion of the trial court." *State* v. *Shawn G.*, 208 Conn. App. 154, 177, 262 A.3d 835, cert. denied, 340 Conn. 907, 263 A.3d 822 (2021). Though the court should issue a capias if a witness is not warranted in refusing to honor a subpoena and her absence will cause a miscarriage of justice; see *DiPalma* v. *Wiesen*, 163 Conn. 293, 298, 303 A.2d 709 (1972); "§ 52-143 does not . . . make it mandatory for the court to issue a capias when a witness under subpoena fails to appear . . . . The court has authority to decline to issue a capias when the circumstances do not justify or require it." (Footnote omitted; internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 330 Conn. 1, 33, 190 A.3d 851 (2018), cert. denied sub nom. *Greene* v. *Semple*, U.S. , 139 S. Ct. 1219, 203 L. Ed. 2d 238 (2019). Accordingly, our review of challenges to the trial court's denial of a capias is ordinarily governed by an abuse of discretion standard. See *State* v. *Shawn G.*, supra, 190.

The petitioner argues that in this case, however, we should be less deferential. Pointing to this court's decision in *State* v. *Burrows*, 5 Conn. App. 556, 500 A.2d 970 (1985), cert. denied, 199 Conn. 806, 508 A.2d 33 (1986), he argues that when the habeas court denied the capias for Jackson, it failed to exercise *any* discretion because it believed that it lacked the authority to do so. As such, he contends that our review should be plenary. See *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 238 ("'[if, however] the court never exercised any discretion because it believed its authority to do so was lacking [our review is plenary] . . . .' *State* v. *Burrows* [supra, 558–59]").[6] The respondent, the Commissioner of Correction, counters that

[6] The petitioner's brief cites *Moye* for this quoted proposition; *Moye* in turn derives the proposition from *Burrows*. We focus our analysis on *Burrows* because the court in *Moye* concluded that the record was inadequate to review the merits of the lower court's capias denial. *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 241. Given this threshold deficiency, the *Moye* court did not subject the habeas court's denial of a capias to *any* standard of review—plenary, abuse of discretion, or otherwise. *Moye* thus

the proper standard of review is abuse of discretion, arguing that "the court denied the request to issue a capias not based on some belief that it *could not* do so, but that it *would not* do so," because "it was not clear that Jackson had received the subpoena or had a reasonable excuse for not appearing . . . ." (Emphasis in original.) We agree with the respondent.

In order to assess the petitioner's claim, a discussion of this court's decision in *Burrows* is warranted. In *Burrows*, a key defense witness failed to appear in court in response to a subpoena. *State* v. *Burrows*, supra, 5 Conn. App. 557–58. The witness had refused to allow the sheriff tasked with serving him to place the subpoena in his hand, so the sheriff had instead read the subpoena aloud in his presence. Id., 558. The defendant requested a capias. Id. The trial court, without reaching the question of whether the witness lacked a reasonable excuse for his absence; id., 558 n.2; determined that it lacked the authority to issue a capias under § 52-143 because the subpoena had not been served in-hand. Id., 558. Reversing the trial court, this court concluded that reading the capias statute to require in-hand service was an overly restrictive reading of the text, which "would render it virtually impossible to effect service upon a witness who is determined to be recalcitrant or determined to insulate himself from a court appearance." Id., 559. While acknowledging that the issuance of a capias was ordinarily within the trial court's discretion, the court stated that, "[i]n the present case, the court never exercised any discretion because it believed its authority to do so was lacking. It is clear that the court had the power, if the witness had actually been served and refused to appear, to issue a capias." Id., 558–59.

At bottom, *Burrows* turned on the proper interpretation of the capias statute—a question of law over which

provides little, if any, guidance as to the appropriate standard of review in this case.

our review was plenary. See *Ugrin* v. *Cheshire*, 307 Conn. 364, 379, 54 A.3d 532 (2012) ("[i]ssues of statutory construction raise questions of law, over which we exercise plenary review" (internal quotation marks omitted)). Here, by contrast, no such question is before us. The habeas court correctly articulated and applied the requirements for the issuance of a capias set forth in § 52-143 (e) and *Moye*. It did not read additional requirements or standards into the statutory text. Instead, "it [decided], after weighing a variety of subordinate facts and legal arguments, whether a party [had] met a statutorily prescribed evidentiary threshold"—a process that we have dubbed "a classic exercise of discretionary authority." (Internal quotation marks omitted.) *Ortiz* v. *Commissioner of Correction*, 211 Conn. App. 378, 385, 272 A.3d 692, cert. denied, 343 Conn. 927, 281 A.3d 1186 (2022).[7]

Resisting that conclusion, the petitioner argues that the habeas court actually based its denial of his capias request on a *legal* determination: a belief that it had no authority to issue a capias based only on a reasonable inference that an absent witness had received a subpoena. The petitioner zeroes in on the court's statement that "I just don't have any evidence that [Jackson] actually received the subpoena. I can infer that, but I don't think that's an appropriate basis to issue a capias." From this, he concludes that the court inferred that Jackson had received the subpoena but that it nevertheless determined that this inference alone was legally insufficient to issue a capias.

---

[7] The facts of this case are similar to those in *Greene* v. *Commissioner of Correction*, supra, 330 Conn. 1, in which our Supreme Court upheld the habeas court's denial of a capias for a witness who had failed to appear in response to a subpoena. Id., 31–34. There, as here, the habeas court declined to issue a capias after the petitioner's counsel failed to present any evidence that the witness' absence was unwarranted. Id., 32–33. Our Supreme Court—recognizing that, under "well established" law, issuance of a capias was within the trial court's discretion—reviewed the court's decision under an abuse of discretion standard. Id.

Although this statement, considered in isolation, might support the petitioner's claim, his reading of the court's decision is too narrow. The record as a whole does not indicate that the court actually inferred Jackson's receipt of the subpoena. To the contrary, in its comments both prior to and in the course of its oral ruling on the capias request, the court repeatedly expressed its skepticism on this point, saying variously: "I just—I don't know that she got the second [subpoena]"; "I don't know that you can show that she received it"; "I don't have any evidence that she received it"; and "[Y]ou may have satisfied the requirements of the capias for March first . . . . [But] I don't know that I can issue a capias based on a previous court date." Moreover, in its memorandum of decision, the court stated that it had denied the petitioner's capias request because he failed to show either that Jackson had received the subpoena or that she lacked a reasonable excuse for her failure to appear. It went no further; it did not state that it nonetheless "inferred" Jackson's receipt of the subpoena, nor did it attempt to delineate the scope of its authority to issue a capias based on inference.

The court's statements indicate that it was hesitant to draw *any* conclusions as to Jackson's receipt of the subpoena, given the dearth of evidence before it. And, to the extent that the court's remark, "I just don't have any evidence that she received the subpoena. I can infer that, but I don't think that's an appropriate basis to issue a capias" creates an ambiguity as to the basis for its decision, we "read an ambiguous trial court record so as to support, rather than contradict, its judgment." (Internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012). We thus conclude, not that the habeas court inferred that Jackson had received the subpoena—which would contradict its stated rationale for the capias denial—but rather that

it based its decision on a discretionary determination that the requirements for a capias had not been met. As such, we conclude that the proper standard of review is abuse of discretion.

II

We now turn to the question of whether the habeas court abused its discretion when it denied the petitioner's request for a capias. The respondent argues that the habeas court properly denied the petitioner's request for a capias. He further contends that, even if the court improperly denied the capias, any error was harmless. For the reasons that follow, we agree with the respondent that the habeas court did not abuse its discretion in denying the petitioner's request for a capias. Accordingly, we need not reach the question of whether its denial of this request was harmful. See *Wiseman* v. *Armstrong*, 295 Conn. 94, 106, 989 A.2d 1027 (2010) (trial court's ruling will generally "result in a new trial only if the ruling was both wrong *and* harmful" (emphasis in original; internal quotation marks omitted)).

In determining whether a trial court has abused its discretion in denying a capias request, "the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Myers* v. *Commissioner of Correction*, 215 Conn. App. 592, 615, 284 A.3d 309 (2022), cert. denied, 346 Conn. 1021, 293 A.3d 897 (2023), and cert. denied 346 Conn. 1021, 293 A.3d 897 (2023). We must "make every reasonable presumption in favor of [the trial court's] action," and we will only disturb its judgment if it "acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *State* v. *Mitchell*, 8 Conn. App. 598, 604, 513 A.2d 1268, cert. denied, 201 Conn. 810, 516 A.2d 887 (1986). "In general, abuse of discretion exists when a court could have chosen different alternatives

but decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper and irrelevant factors. . . . [Reversal is required only] [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done . . . .'' (Internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, 202 Conn. App. 21, 38, 244 A.3d 171 (2020), aff'd, 343 Conn. 424, 274 A.3d 85 (2022).

In the present case, we cannot conclude that the habeas court's denial of the petitioner's capias request was unreasonable, that it acted arbitrarily, or that it based its decision on improper or irrelevant factors. The habeas court made a thorough inquiry of the petitioner's counsel in an attempt to ascertain whether the requirements of § 52-143 (e) and *Moye* had been satisfied. Though Doiron represented that Jackson had refused to appear in response to the subpoena for March 1, she also stated that she had been unable to contact Jackson regarding the subpoena for March 20. She thus was unable to provide the court with any information about whether Jackson had received the subpoena pursuant to which the petitioner was requesting a capias or whether Jackson had a legitimate reason for her failure to appear. Under these circumstances, the court's determination that the petitioner had not made a sufficient showing to justify the issuance of a capias was reasonable. Accordingly, the court did not abuse its discretion in declining the petitioner's capias request.

III

The petitioner also summarily asserts that the habeas court's denial of a capias for Jackson violated his right to compulsory process under the sixth amendment to the United States constitution.[8] Though the petitioner

---

[8] The sixth amendment to the United States constitution, as applied to the states through the fourteenth amendment; see *Washington* v. *Texas*, 388 U.S. 14, 18, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); provides in relevant part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . .''

acknowledges that he did not preserve this claim during his habeas trial, he urges us to review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We decline to do so because the petitioner has inadequately briefed his claim.[9]

Under *Golding*, "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *Banks* v. *Commissioner of Correction*, 347 Conn. 335, 356 n.11, 297 A.3d 541 (2023). *Golding* review is available in civil as well as criminal cases. See *In re Brendan C.*, 89 Conn. App. 511, 519 n.3, 874 A.2d 826, cert. denied, 274 Conn. 917, 879 A.2d 893 (2005), and cert. denied, 275 Conn. 910, 882 A.2d 669 (2005). We are "free to respond to the [petitioner's] claim by focusing on whichever *Golding* prong is most relevant," as the "inability to meet any one prong requires a determination that the defendant's claim must fail." (Internal quotation marks omitted.) *State* v. *Roberts*, 224 Conn. App. 471, 493–94, 312 A.3d 1086, cert. denied, 349 Conn. 912, 314 A.3d 602 (2024).

---

[9] The petitioner also claims that the denial of a capias violated his right to compulsory process under article first, § 8, of the Connecticut constitution. However, he provides no independent analysis of this claim and has therefore abandoned it. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 507 n.9, 72 A.3d 367 (2013).

When an appellant alleges a constitutional violation without citing any authority, we will deem the claim inadequately briefed. See, e.g., *Gonzalez* v. *State Elections Enforcement Commission*, 145 Conn. App. 458, 470 n.6, 77 A.3d 790, cert. denied, 310 Conn. 954, 81 A.3d 1181 (2013). "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim . . . receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008).

Here, although the petitioner asserts that the habeas court violated his sixth amendment right to compulsory process, he has neither cited any authority for the proposition that he retains this right in postconviction proceedings nor provided any meaningful analysis on the issue.[10] Moreover, although the petitioner points to this

---

[10] Although the petitioner's claim is abandoned by virtue of his failure to adequately brief the issue, we note the existence of some authority indicating that the sixth amendment's guarantee of compulsory process does not apply in habeas corpus proceedings—authority that the petitioner neither discusses nor attempts to distinguish. See *Coleman* v. *Balkcom*, 451 U.S. 949, 954, 101 S. Ct. 2031, 68 L. Ed. 2d 334 (1981) (Marshall, J., dissenting from denial of certiorari) ("[a] habeas corpus proceeding is, of course, civil rather than criminal in nature, and consequently the ordinary [s]ixth [a]mendment guarantee of compulsory process . . . does not apply" (footnote omitted)); *Oken* v. *Warden*, 233 F.3d 86, 93 (1st Cir. 2000) (right under compulsory process clause to testify in one's own defense does not apply in postconviction proceedings), cert. denied sub nom. *Oken* v. *Merrill*, 532 U.S. 962, 121 S. Ct. 1494, 149 L. Ed. 2d 380 (2001); see also *Summerville* v. *Warden*, 229 Conn. 397, 423, 641 A.2d 1356 (1994) (characterizing right to compulsory process as constitutional safeguard that makes it more difficult for state to overcome presumption of innocence but holding that presumption of innocence "does not outlast the judgment of conviction at trial"). To be clear, we express no opinion here as to whether the sixth amendment's compulsory process requirements apply to postconviction proceedings; we note these authorities simply to emphasize that the scope of the compulsory process clause's application in this context requires more robust briefing than the petitioner gives it.

court's statement in *Burrows* that seeking a capias is tantamount to "raising a constitutional right, the right to compulsory process"; *State* v. *Burrows*, supra, 5 Conn. App. 559; *Burrows* involved a request for a capias in the context of a criminal trial, not a habeas proceeding, and is thus inapposite. We therefore conclude that the petitioner has inadequately briefed his *Golding* claim because he has not engaged in sufficient analysis to permit us to evaluate whether his claim is "of a constitutional magnitude alleging the violation of a fundamental right." *State* v. *Golding*, supra, 213 Conn. 239.

The judgment is affirmed.

In this opinion the other judges concurred.